### FOR THE

## COUNTY OF FRANKLIN.

### JANUARY TERM, 1846.

---

PRESENT,

HON. CHARLES K. WILLIAMS, CHIEF JUDGE.
HON. STEPHEN ROYCE,
HON. MILO L. BENNETT, } ASSISTANT JUDGES.
HON. DANIEL KELLOGG.

---

### WILLIAM CRANE v. ORSON THAYER.

It is now the settled practice in this State to receive depositions taken in any of the United States, provided they *purport* to have been taken by competent authority, which is not impeached. The court will presume the officer, taking the testimony, to be lawfully entitled to the official character, which he assumes, and to have competent authority to take the depositions, until the contrary appears.

In this case a deposition, taken and certified by a justice of the peace in the state of Illinois, was admitted in evidence, without proof *aliunde* that a justice of the peace has authority to take depositions in that State.

It is not competent, for the purpose of impeachment, to prove that a witness is a notorious counterfeiter.

Where the defendant had received from the plaintiff an absolute deed of land, with the understanding that he was to dispose of the land to the best advantage and apply the avails in discharge of a certain liability which he

had assumed for the plaintiff, and, instead of so doing, he entered into possession of the land, and treated and used it absolutely as his own, and neglected a favorable opportunity to dispose of it, and compelled the plaintiff to discharge, out of other property, the liability which he had assumed, and, on trial of an action, brought by the plaintiff to recover the value of the land, treating the transaction as an absolute sale to the defendant, claimed that the sale was absolute and that he paid the plaintiff in full for the land at the time of the execution of the deed, it was held, that he could not also set up the trust character of the transaction as a defence to such action, but that he was properly charged for the full value of the land, as on a sale to himself.

And the defendant having received from the plaintiff, as security for the same liability, a bill of sale of certain hay, described as being " about twenty five tons, " and as being all there was contained in certain barns, at four dollars per ton, and carried out at one hundred dollars, under an agreement to dispose of the same to the best advantage and account for the avails, and having compelled the plaintiff to discharge the liability out of the avails of other property, it was held, that the liability of the defendant to account for the hay was not limited by the quantity and price of the hay specified in the bill of sale, but that he was liable for all the hay contained in the barns described, at what was its true value at the time the bill of sale was executed.

And the defendant was also held chargeable, in this case, with interest upon the value of the land and hay, to be computed from the time the liability was discharged, which he had assumed for the plaintiff.

ASSUMPSIT, to recover the price of certain property alleged to have been sold by the plaintiff to the defendant. Plea, the general issue, and trial by jury,—ROYCE, J., presiding.

On trial the plaintiff offered in evidence the depositions of Caroline Butler and Ann Maria Appley, purporting to have been taken and certified by a justice of the peace in the State of Illinois, and having appended to them a certificate by the clerk of the county court, for the county in which they were taken, under the seal of the court, that the person taking them was an acting justice of the peace, duly commissioned and qualified; but no evidence was offered, to show that a justice of the peace, in the State of Illinois, is authorized to take depositions, or administer oaths. The depositions were objected to, for this reason, by the defendant, but were admitted by the court.

Crane *v.* Thayer.

The plaintiff introduced one Adonijah Crane as a witness; and the defendant, to impeach him, offered to prove, that he had the notorious reputation of being a counterfeiter, and of supporting himself by making and passing counterfeit money; but the testimony was excluded by the court.

The plaintiff gave in evidence a deed from himself to the defendant of fifty acres of land; and it appeared that the defendant, prior to the execution of the deed, and the receipt of the other property, for which the plaintiff claimed to recover in this action, had entered into a recognizance for the plaintiff in the sum of one thousand dollars, and had received a mortgage of the plaintiff's farm in Berkshire, valued at $1600, as security therefor; and it was claimed by the plaintiff, that the fifty acres of land, as well as the other property, was conveyed to the defendant to constitute a fund, to be applied by him in satisfaction, or part satisfaction, of his liability for the plaintiff, and in ease, or discharge, of the farm mortgaged. It was proved, that the defendant had been compelled to pay a large sum upon his recognizance, and that he subsequently brought a bill of foreclosure upon his mortgage, and thus compelled the plaintiff to refund the amount so paid, without any deduction for the fifty acres of land, or for the other property. It also appeared, that the defendant, from the time he received the deed of the fifty acres of land, had used and occupied the land as his own; and the evidence tended to prove, that he had declined a favorable opportunity to sell the land. It also appeared, that the defendant disposed of the other property in question, which was received as security for the same liability; and there was no evidence tending to show that he at any time spoke of, or treated, the property, or the fifty acres of land, otherwise than as absolutely belonging to himself. The defendant, on the trial, insisted that the land was paid for by him at the time the deed was executed, or at a subsequent time, and gave evidence tending to prove this fact; but he also insisted, that if a trust was proved, as alleged by the plaintiff, still he was not liable, as for land sold, but that he could only be held liable in a court of chancery.

The court, upon this point, instructed the jury, that, if they should find that the defendant had not paid for the land, and that he had uniformly treated it as his absolute estate, they must allow the plaintiff for it, at its just value, although they should find, that it

was conveyed to the defendant for the purposes claimed by the plaintiff.

The plaintiff also gave in evidence a receipt, signed by the defendant, for a quantity of hay, to be disposed of to the best advantage and accounted for; and the defendant gave in evidence a bill of sale of the same hay, and bearing the same date, executed by the plaintiff, which purported to convey to the defendant " about twenty five tons of hay," described as being all the hay the plaintiff owned in certain barns, and a certain stack, at four dollars per ton, and the sum of the price was carried out at one hundred dollars; and to this was appended a receipt acknowledging payment for the hay. The defendant insisted, that he was not liable for the hay, or, if so, that he was liable only for the quantity and price named in the bill of sale.  But the court charged the jury, that the plaintiff was entitled to recover for the actual quantity of hay in the barns mentioned, whether it was more or less than the quantity specified in the bill of sale, and that he was entitled to have it estimated at such price, as was, at the time, its true value.

The defendant also insisted, that he was only liable to pay interest from the time of a demand made upon him by the plaintiff for adjustment of the matter.  But the court instructed the jury, that the plaintiff, *if entitled to recover, could recover interest* upon any money remaining in the defendant's hands, and upon the value of the land and hay, from the time the plaintiff paid the amount for which the defendant had been holden liable upon the recognizance.

Verdict for plaintiff.  Exceptions by defendant.

*Brown & Saxe* and *A. O. Aldis* for defendant.

1.  The courts of this State do not judicially recognize the power of a justice of the peace in Illinois to administer oaths and take depositions, and proof of the fact cannot be made in this court.  1 D. Chip. 176, 200.  Rev. St. 164, §§ 36, 37.

2.  The testimony, offered to impeach the witness Crane, should have been admitted.  A notorious counterfeiter is, *ex vi termini*, a notorious *liar*,—not inferentially, not as a mere probable result, but as an identical condition.  Such is the fact, as found not only in reason, but in the law, which gives to this offence the name of *crimen falsi*.  This case is clearly distinguishable from those of *State* v.

*Smith*, 7 Vt. 141, and *Spears* v. *Forrest*, 15 Vt. 435. A prostitute may or may not be a liar; but a counterfeiter *must be*, in the very nature of his vocation.

3. The plaintiff claims, that the fifty acre lot was conveyed to the defendant in trust, to be sold, if necessary, and the avails applied upon the recognizance, but if not sold and so applied, then to be re-deeded to the plaintiff. To determine what acts of a person holding land as security, with a power to sell, will make him liable as a purchaser, we may consider the rights and liabilities of a *trustee* and his grantor. 1. The trustee cannot purchase the trust lands for his own use. 2. He cannot acquire a title by adverse possession, as between himself and his grantor. 3. He cannot make a profit from the use of the land, but must account. In this case, therefore, the plaintiff has every security, for which he can ask, against the defendant, without making him a forced purchaser. On the other hand the trustee is only liable for a breach of trust, proved by acts of gross negligence, or fraud. That the defendant used and occupied the land as his own was no more than was contemplated, at the time the deed was executed; this proves no breach of trust. That he " declined a favorable opportunity to sell " proves nothing; for it might have been before it was known that he would be liable on the recognizance, and at a time when a sale might itself, in fact, have been a breach of trust. Again, it is said that there was no evidence that the defendant " at any time spoke of or treated the land as otherwise than his own." This was not for the defendant to show; it was a matter to be proved affirmatively by the plaintiff. The evidence would not be sufficient to justify a jury in finding an *ouster* by a tenant in common of his co-tenant,—still less by a trustee of his grantor. *House* v. *Fuller*, 13 Vt. 165. If the plaintiff would charge the defendant with the land, as land sold, he should have proved a demand upon the defendant to re-deed, and a refusal. The claim which the defendant made, on trial, that he had bought and paid for the land, was a legal defence, which he had a right to make, and which, if not made out, does not relieve the plaintiff from the burden of proving all the facts necessary to show a breach of trust.

4. The bill of sale and the defendant's receipt should be construed together, as making the entire contract of the parties. *Ray-*

*mond* v. *Roberts*, 2 Aik. 204, 208.    This contract cannot be varied, enlarged, or controlled, by parol.    Hence it was error in the court to charge the jury, that the plaintiff was not bound by the quantity or price fixed in the bill of sale.    4 Vt. 308.    2 Aik. 208.    *Mumford* v. *McPherson*, 1 Johns. 414.    3 Stark. Ev. 1005–6.

5.    The defendant should not be held liable for interest, except after a demand to re-deed and a refusal, or at least until after some act, which, in law, would excuse the plaintiff from making such demand.    No such proof was offered*    Osgood* v. *Franklin*, 2 Johns. Ch. R. 1.    *Williams* v. *Storrs*, 6 Johns. Ch. R. 353.

*Smalley, Adams & Hoyt,* and *Childs & Royce* for plaintiff.

1.    In relation to the admissibility of the depositions offered, the true rule appears to be, that, whenever an officer in any of the United States, acting within his proper territorial jurisdiction, assumes and exercises the authority usually conferred on and exercised by such officers in other states, the *prima facie* presumption is, that he is acting within the scope of his legitimate authority.    And the burden of proof rests on the party objecting the want of authority, to rebut this presumption.    *Jasper et al.* v. *Porter et al.*, 2 McLean 579.

2.    The evidence offered to impeach the witness Crane was properly rejected.    *Commonwealth* v. *Morn*, 3 Pick. 194.

3.    The charge of the court was correct as to the land.    The inquiry resolved itself into a question of fact.    The defendant, by refusing to sell the land when a favorable opportunity occurred, by using and occupying it as his own, by neglecting to allow any thing for the use of it, and by insisting that he had paid for it, affirmed that he held it by purchase and not in trust, and made his defence rest on the ground of payment,—which was properly submitted to the jury.

4.    From a fair construction of the contemporaneous papers as to the hay, it is clear, that the defendant ought to be held liable for the quantity which he actually received, at its true value.

5.    If either party has a right to complain of the instructions of the court as to interest, it is the plaintiff.    The instruction would have been proper, if it had been that the plaintiff might recover interest from the time the defendant received the property for one purpose and misapplied it to another.

---
Crane *v.* Thayer.
---

The opinion of the court was delivered by

KELLOGG, J. The depositions of Caroline Butler and Ann Maria Appley were properly admitted in evidence to the jury. They appear to have been taken in the state of Illinois, by a justice of the peace of that state, whose official capacity is duly shown by the certificate of the clerk of the court for the same county, to which is affixed the seal of the court. But we attach no importance to the fact, that the depositions were accompanied by the seal of the court and the clerk's certificate, inasmuch as it is now the settled practice in this state, to receive depositions, taken in any of the United States, provided they *purport* to have been taken by competent authority, which is not impeached. The court will presume the officer taking the testimony to be lawfully entitled to the official character, which he assumes, and to have competent authority to take the depositions, until the contrary appears. In *Jasper et al.* v. *Porter et al.,* 2 McLean, 579, it was held, " that the court would receive the certificate of the magistrate, as *prima facie* evidence of his right to take the deposition, without the certificate of the clerk and the seal of the court, or any other evidence of his official character." Nothing having been shown to impeach the authority of the magistrate to take the depositions, they were properly admitted.

It is farther urged, that the county court erred in rejecting the testimony offered, to prove that Adonijah Crane, a witness introduced by the plaintiff, had the reputation of being a notorious counterfeiter. This testimony was offered for the purpose of impeaching the character of Crane for truth, and we think it was properly rejected. It is a well settled general rule, that evidence to impugn the character of a witness should be confined to his *general* character for *veracity,* and that inquiries as to *particular instances* of moral *delinquency* are not admissible. 3 Pick. 196. 13 Johns. 505. This rule has been uniformly adhered to in this state, and we see no sufficient reason for departing from it. In *Spears* v. *Forrest,* 15 Vt. 435, the court held, that evidence, that the witness was a common prostitute, was inadmissible ; and yet we apprehend there would be quite as much propriety in admitting such ʼevidence, as impeachment of the general character for truth, as in admitting evidence that the witness was a counterfeiter. But it has been urged, that a " notorious counterfeiter is, *ex vi termini,* a notorious liar."

If this proposition be true, there would seem to be no necessity for a relaxation of the general rule, which confines the inquiry to the general character of the witness for truth and veracity; for in that event the *reputation* of the counterfeiter for truth and veracity must necessarily be bad. We are all clearly of opinion that this evidence was properly excluded.

It is farther insisted in the argument, that the court below mis-directed the jury in the charge relative to the fifty acres of land, conveyed by the plaintiff to the defendant. The defendant endeavors to sustain this objection upon the ground, that the land was conveyed to him as security, to indemnify him for entering into a recognizance for the plaintiff, and that he held it in trust, and not as a purchaser, and consequently, that he would only be liable upon his refusal, on request, to re-convey the land. This, as a general proposition, would be readily conceded, where the property is conveyed in trust, and the trustee has conducted fairly, treating the property as trust property. But it must be borne in mind, that the deed was not in terms a trust deed, but an absolute, unconditional conveyance; that the defendant used and treated the property as his own, and not as trust property; that he claimed, and insisted at the trial, and gave evidence tending to prove, that he paid for the land when it was conveyed to him; and that he did not sell the land, when a favorable opportunity offered, and apply the avails, as well as the avails of the hay and other property, in discharge of the recognizance. After this claim of absolute ownership of the property, and consequent denial of his liability to account for it, he is not to be allowed to set up the trust character of the transaction, to shield him from responsibility in this suit. We think, therefore, that the charge of the court, upon this part of the case, was unexceptionable.

It is also objected, that the court, in their instructions to the jury, erred in their construction of the bill of sale of the hay and the receipt, or written acknowledgement, executed by the defendant at the same time. The bill of sale does not purport to give the *quantity* with certainty, but says "about 25 tons," being the whole in the barns and a stack, for four dollars per ton, being one hundred dollars. This, standing alone, would undoubtedly be conclusive upon the party as to the price per ton, and perhaps one hundred dollars would be regarded as the amount to be paid for the whole; but when

22

we consider this in connection with the written acknowledgment of the defendant, made at the same time, we think it evident, that the bill was simply to furnish the defendant evidence of the sale of the hay to him, and that he was to make the best disposition of it he could, and account for the avails. We are therefore entirely satisfied with the construction put upon these instruments by the county court.

The defendant having applied the avails of the hay and the use and income of the. fifty acre lot to his own use, instead of applying it to the discharge of the bond of recognizance, as he ought to have done, it was a gross and fraudulent misapplication of the funds. The county court were therefore right in their directions to the jury upon the subject of interest.

Judgment of the county court affirmed.