## Case No. 13,335.

STEAM STONE CUTTER CO. v. WINDSOR MANUF'G CO. et al.

[17 Blatchf. 24; 4 Ban. & A. 445.] [1]

Circuit Court, D. Vermont. Aug. 11, 1879.

PATENTS—INFRINGEMENT— GAINS AND PROFITS— COST OF MANUFACTURE—INSURANCE—SALARIES— LIABILITIES ON GUARANTIES — INTEREST — MASTER'S REPORT—POWER TO SET IT ASIDE.

1. A court has power to set aside a report of a master for any manifest error, either in law or fact, and to recommit it for further proceedings, or to correct it, if the means of correction are furnished.

2. The principle stated, upon which gains and profits are recovered from an infringer, in a suit in equity.

[Cited in Steam Stone-Cutter Co. v. Sheldons, 21 Fed. 878.]

3. Where infringing machines have been made and sold for profit by the infringer, the plaintiff is entitled to whatever of that profit arose from appropriating the patented inventions by making and selling those machines, although other infringing machines were disposed of by the infringer without profit, or are still on hand and cannot be disposed of, involving loss to the infringer.

[Cited in Porter v. Standard Measuring Mach. Co., 142 Mass. 195, 7 N. E. 928.]

4. The value of the use of real and personal estate belonging to the infringer, such as shops, fixtures and machinery, including repairs, employed in making the machines made and sold for profit, is to be allowed as part of their cost.

5. The amount paid for insurance on such property, the insurance being for the safety of the property, generally, and not for the benefit of the manufacture of those machines, is not to be allowed as part of their cost; nor is the amount paid for local taxes on such property.

6. The infringer being a corporation, salaries paid to stockholders in it employed in making those machines, such salaries having been paid in good faith, for services actually rendered, and not as a mode of dividing profits, or for the purpose of concealing profits, are to be allowed as part of the cost of those machines.

7. Where a portion of the prices at which those machines were sold was due to an arrangement of the boiler in the machine, different from the plaintiff's, but the defendant had no monopoly of such arrangement, such portion of the price being allowed to the plaintiff, the cost of the workmanship is to be allowed to the infringer.

8. Where $750 of the price at which each of those machines was sold was due to a patented improvement of the infringer, called a bow-string, attached to and sold with the machine, no part of the $750 is to be allowed to the plaintiff, and no part of the cost of making the bow-spring is to be allowed to the infringer.

9. The infringer had incurred liabilities on guaranties and warranty of title, as to those machines, but nothing is to be deducted on that account from the avails of their sales, because those liabilities will be extinguished by satisfying the plaintiffs' recovery as to those machines.

[Cited in Steam Stone-Cutter Co. v. Sheldons, 15 Fed. 608.]

10. Interest on the profits decreed was charged against the infringer from the time of the entry of the interlocutory decree.

[Cited in Burdett v. Estey, 3 Fed. 572; Bischoffsheim v. Baltzer, 21 Fed. 532.]

[11. If the avails of a sale are claimed and taken, the right to the thing sold must be parted with. It will be like taking judgment and satisfaction for the conversion of the property, which always operates so that the defendant hath now the same property therein as the original plaintiff had, and this against all the world.]

[Cited in Booth v. Seevers, Case No. 1,648a.]

[This was a bill in equity by the Steam Stone Cutter Company against the Windsor Manufacturing Company and Elbridge G. Lamson for the infringement of letters patent No. 40,584, granted to J. G. Wardwell, November 10, 1863, reissued October 10, 1865, Nos. 2,087 and 2,088.]

Aldace F. Walker and Chauncey Smith, for plaintiff.

Wheelock G. Veazey and Edward J. Phelps, for defendants.

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 445; and here republished by permission.]

WHEELER, District Judge. This cause has been heard upon the report of the master and exceptions by each party thereto. The exceptions of each raise some questions of fact as well as of law, and, in argument, it has been urged, on behalf of the orator, that these findings of fact should be revised by the court, and corrected in favor of the orator, and, on the part of the defendants, that they should not be revised, but, if revised, that there are errors which should be corrected in favor of them. There is no doubt but that the court has power to set aside the report of a master for any manifest error, either in law or fact, and to recommit it for further proceedings, or to correct it, if the means of correction are furnished. But, upon all that has been suggested or observed, in respect to this report, there is nothing that appears to warrant any interference with the findings of the master as to anything material to the rights of the parties, so far as his findings have extended.

There are various questions submitted by the master, and there is one point upon which he has reported no finding, that now seems to be material, which are to be considered. This bill was brought before the act of July 8, 1870 (16 Stat. 206, § 55), authorizing courts of equity to take an account of damages as well as of profits, in suits for the infringement of patents, and has proceeded, in this respect, for the recovery of profits only. The validity of the orator's patents and the infringement by the defendants have been established, so that the questions remaining here are solely as to the amount to which the orator is entitled. The defendant Lamson appears to have received nothing, otherwise than as a stockholder of the other defendant, on account of the infringement, and no decree for the payment of any money can be made against him.

The rights of the parties may be better understood, and a correct solution of several of the questions presented be more readily reached, by first considering the grounds upon which such recovery as may be had here rests. There was nothing in the statutes relating to patents, before the act of 1870, providing expressly for the recovery of the gains and profits of an infringement of a patent by suit in equity. The right must have been derived from the application of the general principles of justice, as administered in courts of equity, to the relations between the owners of patents and infringers, created by the patent laws. The patentee owns the monopoly of the patented invention. When an infringer converts any part of the monopoly into money, or into anything else, the owner has the right to follow his property in its new form. The person in whose hands it is becomes his trustee; not because he was ever a trustee of the invention or monopoly, or had any

right whatever to dispose of it for the owner, but because he had the money or other thing in his hands, which the owner of the invention had the right to claim because the invention brought it. It is what is received for the invention that belongs to the owner of the patent, and, when that is not mixed with what is received for anything else, there can be no difficulty about how much the owner of the patent is entitled to; when it is, the difficulty lies wholly in making separation. Littlefield v. Perry, 21 Wall. [88 U. S.] 205. Here, the defendant, the Windsor Manufacturing Co., made sales of eleven infringing machines, for profit; and, whatever of that profit arose from the appropriation of these patented inventions by the making and selling those machines, the orator is entitled to here, and no more. Other machines were made by the defendant, embodying the invention, which have been disposed of without profit, or are still on hand and cannot be disposed of, and which, as they are left, involve serious loss to the defendant; but these facts do not vary the amount received for those sold, on which profit was made. The defendant did not make nor sell any of them for the orator. The whole was done on its own account, as a part of its own business, exclusively. Each infringement was separate, and no claim accrued in favor of the defendant against the orator, on account of any of them. The losses of unfortunate attempts were the defendant's own losses, and there is nothing to set-off against the orator's right to the avails of the successful attempts. If the defendant had been acting for the orator, and the whole enterprise, in connection with making this kind of machines, had been the enterprise of the orator, the net result would have been what the orator would have to stand to; but, the enterprise was an enterprise of the defendant; none of the machines were made by the defendant for the orator; neither has the orator adopted the making or selling any machine, as having been done for itself. It had nothing to do with any of the machines, except as they included the patented invention, nor with the sale of any of the machines, except as the sale included so much of the invention, and, as to that, it only claims what the invention brought, which is the same as if anything else belonging to the orator had been put into and sold with the machines, and the orator claimed what that brought. The orator waives the tort, and proceeds for the money arising from the tort. The money arising here is what would be left, after deducting the cost of the machines which the defendant furnished, from the avails of the sales of the machines, including the invention that belonged to the orator.

The machines sold for $58,500; some of them with an express guaranty, in writing, of the right to use, and the rest with such war-

ranty as would be implied by law from the fact of sale. The master has found and allowed elements of cost of manufacture of these machines, about which there is no question of law, to the amount of $35,451.93. He has also allowed for local taxes $116, which the orator claims should be disallowed, and has reported that the use of real and personal estate, belonging to the defendant, including repairs, employed in making these machines, was worth $2,632.46; that there was paid for insurance on such property, $455.52; that there was paid for salaries to stockholders of the defendant, employed in the making, $1,490; that $8,250 of the prices at which the machines were sold was due to a patented improvement of the defendant, called a bow-spring, attached to and sold with the machines, and $1,100 to an arrangement of the boiler in the machine, different from the orator's, which the defendant insists should be added to the cost of manufacture; and that the defendant's liabilities upon their guaranties and warranty of title is $22,000, if they are responsible for a failure of the right to use, which the defendant claims should be deducted from the avails of the sales.

The machines cost the defendant the use of this real and personal estate, the shops, fixtures, and machinery. They could not have been made without such use, any more than they could be without iron. The whole cost of the machines belongs to the defendant, and no sound reason is apparent why this part should be left out. The personal efforts of a mere wrong-doer are not a proper subject for compensation to be allowed by a court, but this stands on different footing. The orator had no right to the use of shops and machinery, and has no right to the money brought by that use.

The insurance was no part of the cost of manufacture. It was not put upon the property because it was engaged in this business. Had it been consumed by the element insured against, no part of the insurance would belong to the orator. Harding v. Town of Townshend, 43 Vt. 536. That money would have come from the defendant's property, not from the plaintiff's invention. The insurance was not for the benefit of this manufacture, but for the safety of the defendant in respect to its own property, generally.

It is so, in some respects, as to the local taxes. In that locality such taxes are assessed upon property according to its value, and not on account of its employment. No property is taxed because it is engaged in any particular manufacture, or because engaged in any manufacture, although, sometimes, it is exempt for a while because it is so engaged. These taxes, if justly assessed, as is to be presumed, would have been precisely the same if the property had been engaged in other business, or had been otherwise invested, or had been lying idle and wholly unproductive. So, the payment of the taxes did not have, or, at most, is not shown to have had, any effect whatever upon the cost of the machines.

The salaries paid to stockholders appear to have been paid in good faith, for services actually rendered, and not at all as a mode of dividing profits, or for the purpose of concealing profits. They were the same to the defendant, in its corporate capacity, in which it is sued, as if they had been paid to others not stockholders. It does not appear that the part which these salaried officers took in the business was such as to make them personally liable as infringers. The corporation infringed and is sought to be charged for it in its corporate identity, and it should be held only according to its complete identity.

The defendant has not, so far as at all appears, any monopoly, by patent or otherwise, of the arrangement of the boiler in the machines. Placing it there was a mere matter of workmanship, for which the defendant should be allowed as a part of the cost of manufacture. That is allowed otherwise, and nothing should be allowed again on that account.

The defendant had a patent on the bow-spring improvement, and made use of it in disposing of so much of the orator's patents as was embodied in the machines. This improvement brought, according to the finding, $750 of the price which each machine brought. That part was not any product of the sale of the orator's invention. It is said, in argument, that the use of the bow-spring was intended and expected to make the use of the orator's invention more extensive and effective, which is, perhaps, true, and that, therefore, the orator should have the whole price due to both inventions, as belonging to that enhanced use. If this was an accounting for damages, there would be force in this suggestion, for, the more effective the machines sold were the greater the inroad upon the monopoly their sale would be, and the greater the damage. But, here, the sole question is as to how much was received from the appropriation and sale of the orator's invention, and not what damage resulted; and, what was received for the sale of something else, belonging to the defendant and not to the orator, should not be allowed to the orator. If, however, the defendant has $750 of the price of each machine, on account of the enhancement which the bow-spring furnished, no part of the cost of making the bow-spring should be treated as a part of the cost of what embraced the orator's invention. That cost should all be deducted from the total cost of the machines, and the remainder only be deducted from the remainder of the price of the whole, after the price belonging to the bow-spring has been deducted. The master has not reported what the total expense of the bow-spring is, but only that it brought $750 above the actual cost of making it and its attachments, leaving the part of other expenses allowed, belonging to it, unascertained. If, however, the proportion between what this part of the invention brought and its part of

this cost of the machines was the same as that between what the orator's invention brought and its part of this and the other parts of the cost of the machines, which is probable, the part of this cost of manufacture belonging to the bow-spring can readily be ascertained. It will bear the same proportion to the whole amount of these outside expenses as $8,250, the price of the bow-spring, bears to $58.500, the whole price. This part of the account is to be adjusted upon this basis, unless one party or the other moves for and obtains a further hearing in this respect.

As before stated, the only reason why the orator is entitled to any of the avails of the sales is, that, by the sales the defendant has converted the orator's property into money, which the orator is entitled to have in place of the property. The sale, to be an infringement, so as to entitle the orator to anything more than a mere nominal sum, must be a sale for use. Curt. Pat. § 294. Here, that part of the avails of the sale belonging to the patented invention is large and substantial, and not merely nominal. If the avails of the sales are claimed and taken, the right to the thing sold must be parted with; solutio pretii emptionis loco habetur. 2 Kent, Comm. 387. It will be like taking judgment and satisfaction for the conversion of property, which always operate "so that the defendant hath now the same property therein as the original plaintiff had, and this against all the world." Adams v. Broughton, And. 19, Strange, 1078. And this relates back to the time of conversion. Add. Torts (Wood's Ed.) 544; 6 Hen. VII. fols. 8, 9, pl. 4; Shep. Touch. 227; Barnett v. Brandao, 6 Man. & G., 640, note. The sales must be adopted by the orator upon the very terms upon which the defendant made them, and as much right to the inventions must follow as if the sales had been made by the orator instead of by the defendant. It may be that this right will not follow until satisfaction is made; but, whether it will or not is not now material. The question now is how much the orator is entitled to recover by way of satisfaction; and this is to be arrived at on the ground that satisfaction will be made. If not made, the defendant will not suffer unjustly by having it reckoned as if it would be. It follows, necessarily, that the defendant will be under no liability over to the purchasers after satisfaction, and that nothing should be deducted here on that account.

There are profits on repairs sold, to the amount of $1,732, and on cutting done by the defendant, to the amount of $810.03, about which there is now no question.

Upon these conclusions, there is to be added to..................... $35,451 93
for use of real and personal estate and repairs .................... 2,632 46
and for salaries of stockholders.... 1,490 00

making total cost of machines sold.. $39,574 39
the share of cost of bow-spring is.. 1,544 39

leaving for cost to be deducted.... $38,030 00

From the amount of sales........ $58.500 00
is to be deducted for bow-spring... 8,250 00

leaving ..................... $50,250 00
from which is to be deducted...... 38,030 00

which leaves .................... $12.220 00
to which is to be added........... 1,732 00
and .......................... 810 03

making ...................... $14,762 03
received by the defendant for the plaintiff's invention.

The defendant sold one machine with special guaranty of the right to use, and received $1,000 in money and $3,000 in notes, on time, therefor. Upon demand of a machine by the purchaser, that might lawfully be used, which the defendant could not comply with, the contract was rescinded by agreement, leaving the money in the defendant's hands, against which the defendant has a claim of about the same amount, and the notes there, but not enforceable. The orator claims that the defendant should be charged with the profits of this machine, as upon a sale at $4,000. There is, however, no money, or the equivalent of money, arising from this transaction, belonging to the orator. The money received would not cover the actual cost of the machine. The notes were always subject to the defence of want of title, or, at least, to be extinguished by recoupment of damages, from failure of title to the invention and breach of the guaranty, while they were held as subsisting securities, and, since then, they have been wholly inoperative. There is nothing here to be reckoned, to vary the above statement.

The plaintiff claims interest upon the amount in the defendant's hands, and the defendant denies any liability to account or be charged for interest. In Silsby v. Foote, 20 How. [61 U. S.] 378, Mowry v. Whitney, 14 Wall. [81 U. S.] 620, and Littlefield v. Perry, 21 Wall. [88 U. S.] 205, interest upon profits of an infringement decreed to be paid was disallowed; in the first of the cases, without remark; in the second, with the remark that the profits were really damages unliquidated, upon which interest is not generally allowable, but that the court would not say that in no possible case could interest be allowed; and, in the latter, with the remark, that profits actually realized were usually, in cases like that, the measure of unliquidated damages, that circumstances might arise which would justify the addition of interest, in order to give complete indemnity for losses sustained by wilful infringement, and that it would be for the court to determine, upon the coming in of the new report in that case, accompanied by other evidence, whether the conduct of the defendants had been such as to subject them to liability in that particular. The tendency, in cases prior to the act of 1870, seems to have been toward confining the liability to account for gains and profits more strictly to those

actually received, and, at the same time, towards recognition of a liability for interest on the profits received. Still, no rule is laid down as to when it should or should not be allowed.

In this case, the defendant is made to account only for money or its equivalent actually received and held by the defendant, but belonging to the plaintiff. The master has found that the defendant began and continued the business in good faith, believing it was not infringing the orator's rights, but having knowledge, while making and selling the machines, of the orator's claims. It is argued, for the orator, that the duty of the master was merely to take and state the account, and that no question of good faith was before him. But, if the question of good faith was pertinent to any part of the accounting, it was as much before him as those things pertaining to any other part. There was no contract about any part of this liability, and none to pay interest more than to pay anything else; so, the defendant cannot be charged with interest, except for the wrongful detention of the plaintiff's money. If the defendant wilfully, without right, and knowing it was without right, took the plaintiff's patented invention and converted it into money, with the intention of keeping it, while it was kept the detention of it would be manifestly wrongful. Upon the finding, this taking was intentional and without right, but with belief of right. Knowledge of the orator's claims involved knowledge of the orator's patents, and the belief of right must have been founded in the expectation of defeating the patents. The defendant had a patent for the bowstring, as an improvement, but none for the machine covered by the orator's patents. It invaded the patents, taking the risk of its turning out to be rightful or wrongful. It has turned out to be wrongful, and, since the entry of the decree in the cause, October 7th, 1870, the money has been detained with full knowledge of the character of the detention. And the defendant was not ignorant of the amount, for its books showed the amount approaching toward accuracy.

In Ekins v. East India Co., 1 P. Wms. 395, on an accounting for a ship and cargo, bought by an agent of the defendant, of a person having no power to sell, the court charged the defendant with interest, and said: "If a man has my money by way of loan, he ought to answer interest; but, if he detains my money from me wrongfully, he ought, a fortiori, to answer interest. And it is still stronger where one by wrong takes from me either my money, or my goods which I am trading with, in order to turn them into mon-

ey." This decree appears to have been affirmed, on appeal to the house of lords. 2 Brown, Parl. Cas. 382; 1 P. Wms. 397, note. It was said by Lord Mansfield and Mr. Justice Wilmot, in Fisher v. Prince, 3 Burrows, 1363, that interest might be allowed by a jury, in trover, for money numbered or in a bag. It was allowed on money obtained by fraud and imposition, in Wood v. Robbins, 11 Mass. 504, and on money detained by an officer, in People v. Gasherie, 9 Johns. 71. This seems to be well settled in Massachusetts. Hubbard v. Charlestown R. R., 11 Metc. [Mass.] 124. And, if the law of the state of Vermont, where the money was detained, should govern, as perhaps it ought to, the law is the same there. Crane v. Thayer, 18 Vt. 162; Vermont & C. R. Co. v. Vermont Cent. R. Co., 34 Vt. 2. It is quite usual to charge a party with interest from the commencement of a suit, on account of the effect of it, as a demand, upon the mind of a party. Hunt v. Nevers, 15 Pick. 500; Brewer v. Tyringham, 12 Pick. 547; Haven v. Foster, 9 Pick. 112. And it seems not to be improper here, to charge the party with interest from the entry of the decree, because ever after that the detention was known to be wrongful. This seems the more just, because all of the money was not received until about that time, October 1st, 1870, according to the master's report, although some of it was received considerably before. This interest amounts to $7,836.17, which, added to the principal sum, $14,762.03, makes $22,598.20 to be paid by the defendant, the Windsor Manufacturing Company, to the plaintiff, as of the 6th day of August, 1879.

The exceptions to the master's report are overruled accordingly, and the report is accepted and confirmed. Let a decree be thereupon entered, that the defendant, the Windsor Manufacturing Company, pay that sum, with costs, to the clerk, for the benefit of the plaintiff, and, in case the sum of $7,598.20, with the costs and interest thereon from said 6th day of August, is not paid within thirty days from that day, that special execution issue, for the whole sum to be paid, at the expiration of said thirty days; and, in case that sum is so paid, and the balance of $15,000 is not paid within sixty days from said 6th day of August, with interest from that day, that special execution issue for the amount so remaining unpaid, at the expiration of said 60 days.

[NOTE. This cause was again heard upon an additional report of the master, and the exceptions thereto. The exceptions were overruled. Case No. 13,336. For a motion for an attachment for contempt, see 3 Fed. 298. For other cases involving this patent, see Cases Nos. 13,331 and 13,334.]