[See Case No. 17,594.]

---

## Case No. 17,594.

### WHITNEY v. MOWRY.

[4 Fish. Pat. Cas. 207.] [1]

Circuit Court, S. D. Ohio. Aug., 1870.[2]

EXTENSION OF PATENTS—CONCLUSIVENESS OF COMMISSIONER'S ACTION—CONSTRUCTION OF SPECIFICATIONS—INFRINGEMENT — ESTOPPEL — MEASURE OF PROFITS.

1. The action of the commissioner in extending a patent is judicial in its character, and can not be collaterally brought under review as matter of defense in a suit against an alleged infringer.

2. Nor can an infringer be allowed to defend upon the ground that the extension was obtained by the patentee by means of fraud and perjury.

3. Whatever else Whitney's patent may be for, it is clearly for the process described, as an entirety.

4. It is not proper, upon a motion to confirm or reject the master's report, to consider open any question which was foreclosed by the decree by which the case was referred to the master.

5. When, therefore, the master based a finding upon the hypothesis that the defendant did not infringe the patent, held, that such hypothetical finding ought not to be in the record.

6. The defendant having used the process of the patentee before the bill was filed, and down to the grant of a perpetual injunction, must be held to be estopped from insisting that a portion of the process is entirely useless, if not injurious.

7. Every doubt upon the question of utility should be resolved against an infringer who uses the patented process.
[Cited in Lehnbeuter v. Halthaus, 105 U. S. 97.]

8. Where the defendant manufactured wheels by the process of the patentee, and made large profits from such manufacture, and the master reported that precisely such wheels could not be made without infringing the patented process, but that wheels of the same material, size, shape, and weight could have been manufactured by other processes at less cost, and that such wheels would have had the same market value as those which the defendant made, held, that the complainant was entitled to the entire profit of the manufacture.

These were motions upon exceptions to the final report of the master, to which reference has been made in a former report of this case [Case No. 17,593]. The whole amount of profits, as reported by the master, being the whole profit of the manufactured wheel, was over one hundred and eleven thousand dollars, and for this sum a final decree was entered in accordance with the opinion.

H. Baldwin and B. R. Curtis, for complainant.

C. B. Collier and E. M. Stanton, for defendant.

SWAYNE, Circuit Justice. This case was finally heard upon the merits by my Brother Leavitt, the district judge holding the circuit court. He decreed that a perpetual injunction should be awarded, and that an account should be taken of the profits made by the defendant in violation of the rights secured to the complainant by his patent. The case was referred to a master to take the account. The master performed this duty, and reported the results. Both parties excepted, and the case is now before me upon these exceptions. They have been fully and ably discussed by the counsel upon both sides. At the hearing, a preliminary motion was submitted by the defendant for leave to amend his answer by setting up that the extension of the patent was obtained by the complainant by means of fraud and perjury. This motion also was very fully argued. Upon that subject, it is sufficient to remark, that the extension can not be questioned in this proceeding. Such an inquiry can be gone into only in a proceeding had directly for that purpose. The action of the commissioner was judicial in its character, and can not be collaterally brought under review as matter of defense in a suit against an alleged infringer. The question was fully considered in the case of Providence Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 788. Such was the unanimous judgment of that tribunal.

The complainant filed two exceptions to the supplemental report of the master, dated September 17, 1868. They are as follows: "First exception. The evidence does not warrant the master in finding, as matter of fact,

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[2] [Reversed in 14 Wall. (81 U. S.) 620.]

'that the defendant did not, when he began the use of said process, nor afterwards, while he continued its use, make any difference in the quality of iron used for the manufacture of car-wheels, nor in the weight or form of car-wheels, nor by reason of the use of such process, in their price.' Second exception. The evidence does not warrant the master in finding, as matter of fact, 'that the defendant was unable to discover that his business was increased by the use of said process; that it was with a great deal of difficulty that he introduced the annealed wheels; that the railroad companies purchasing from defendant preferred the old wheels, that is to say, those manufactured by the process used by the defendant prior to April, 1861, for one or two years after the new annealed wheels, that is to say, the wheels annealed by the process complained of in this cause, were first introduced; and that since the defendant has been enjoined in this cause, and has abandoned the use of the process complained of, he has had the same customers—excepting the Little Miami and the Columbus and Xenia Railroad Companies, and it does not appear that said companies have withdrawn their custom on account of said abandonment—and has sold the wheels he has since manufactured without the process complained of as readily as those manufactured by the use of said process, and at the same prices.' "

The ground of these exceptions is, that the facts found are not warranted by the evidence before the master. In my judgment they are sustained by that evidence, and the exceptions are, therefore, overruled.

The complainant also excepted to certain parts of the supplemental report of the master of March 23, 1869. The parts of the report to which these exceptions refer are as follows: " 'II. If, as is claimed by the defendant's counsel, there is no infringement of the complainant's patent unless the wheels are subjected to the process of reheating, that is to say, if the process of slow cooling used in connection with the reheating is old, and not a part of the complainant's invention, nor included in his patent, the master finds that no part of the profits realized by the defendant from the manufacture and sale of said wheels was due to the use by him of the complainant's invention.' 'V. The master finds that the wheels aforesaid could have been removed from the molds and finished without being subjected to the reheating process—(1) by placing them in pits as soon as they could be handled, covering them with hot sand, and thereby slow cooling them; (2) by placing them in like manner in pits, without any fuel, covering the pits, and thereby slow cooling them.' The master finds that wheels so manufactured have, and did have from April 1, 1861, to April 7, 1867, a market value equal to that of wheels manufactured by the use of

the process complained of in this cause. But I find that wheels of the material, size, shape, and weight of those manufactured by the defendant, could have been manufactured without the use of extraneous heat, and at less cost by either of the methods described in finding V of this report, and that wheels so manufactured would have had the same market value, in the market where the defendant sold said nineteen thousand eight hundred and nineteen car-wheels, as if extraneous heat had been applied to them, as described in the complainant's patent, or as used by the defendant."

The first part of the report covered by these exceptions is not very clearly expressed. It was not denied or questioned by the defendant's counsel until very recently—so far as I am advised—that the patent does cover the entire process which it describes, of slow cooling in connection with reheating. At the hearing upon the merits, it was expressly admitted by one of the counsel for the complainant, that reheating alone, in connection with subsequent slow cooling, was the invention or discovery of the patentee and what the patent was for. It was conceded that slow cooling was in prior use and previously well known. It was also conceded that slow cooling without reheating would not be an infringement of the patent. The language of the counsel referred to was: "If he (Mowry) does not think, as his counsel have argued, that there is any thing in Whitney's idea of reheating, let him adopt Lobdell's dry sand process, or some other that is obviously different from ours, so that," etc. This construction was not dissented from by the other counsel upon the same side who participated in the argument.

It has since been, and is now, claimed by the complainant that the patent covers not only the reheating and slow cooling in combination, making the entire process described, but also the several parts of the process taken separately, including slow cooling without reheating, as where slow cooling alone is used by the alleged infringer. On the other hand, I understand it was claimed before the master by the defendant, that the patent is to be so construed as to limit its effect to reheating, and that if the defendant used slow cooling in connection with reheating, as described in the specification, he is to be held liable only so far as his profits are shown to have been increased by the element of reheating; hence the finding of the master under consideration. To this view of the subject I can not accede.

Whatever else the patent may be for, it is clearly for the process described as an entirety. All the wheels to which the master's account relates were finished by both reheating and slow cooling. This brings the case clearly within the patent

I do not deem it proper to consider open any question which was foreclosed by my learned brother in settling the decree by which the

case was referred to the master. Whether slow cooling without reheating is covered by the patent, and whether the patentee was the original and first inventor of that process as applied to car-wheels, are inquiries wholly outside of the case and not necessary to be considered in its proper determination. This hypothetical finding of the master ought not, therefore, to be in the record. For these reasons the exception is sustained.

The other exceptions relate to the master's conclusions from the testimony touching the several propositions of fact which the exceptions involve. I think the testimony sustains the findings, and therefore overrule the exceptions.

The defendant excepts to the following portions of the master's report of March 23, 1869: " 'I. If, as is claimed by complainant's counsel, the entire process of reheating and prolonged cooling, used by the defendant in the manufacture of said wheels, was an infringement upon the complainant's patent, the master finds that the total profits realized by the defendant from the manufacture and sale of said wheels, was due to the use by him of the complainant's invention.' 'III. The master finds that, had said wheels, manufactured by the defendant, been left to cool in the open air, they would have had no market value as car-wheels; they would have been worth only the value of the iron of which they were made. Reheating in connection with slow cooling, or slow cooling without reheating, is indispensable to make marketable cast-iron car-wheels of the configuration of those made by the defendant. IV. The master finds that there is no reheating process for the manufacture of cast-iron car-wheels outside of the complainant's patent.' Complainant's counsel ask for the following findings: '(1) That the wheels of which the master has taken an account, made and sold by the defendant, were annealed wheels, and were sold as annealed wheels.' This I adopt as a finding, and hereby report it as such to the court. '(2) That the process patented to the complainant, and, as found by the court, used by the defendant in the manufacture of said wheels, conferred upon them their entire market value, and their entire value above their weight in iron.' If the court shall decide that the complainant's patent includes prolonging the time of cooling the wheels, as used by the defendant, I adopt this as a finding; but if the complainant's patent covers only the application of extraneous heat to the wheels after they are taken from the molds, I decline to make this finding. '(3) That no process of annealing, in connection with prolonged cooling of cast-iron car-wheels, other than that patented to the complainant April 5, 1848, and that described in the patent of May, 1861, appears to be or to have been known in the manufacture of iron car-wheels.' Taking 'annealing' to mean 'reheating' in connection with slow cooling. I adopt this as a finding, and report it as such. '(4) That the said wheels made by the defendant required no treatment, other than that described in the said patent of complainant, to complete them

as annealed wheels.' This I adopt as a finding, and report it as such to the court. '(5) That the said annealed wheels made and sold by the defendant could not have been made by any process outside of the complainant's patent.' This will be considered in connection with the requests by counsel for defendant, as follows: I am requested by counsel for defendant to embody in my report the specific inquiries addressed to me by the court, and to answer them in the affirmative or negative, as the fact may appear. 'First. Whether the wheels made and sold by the defendant had, or could have been made to have, any market value without being subjected to the process patented to the complainant. Second. If they had, or could have been made to have, such value by any annealing or slow cooling process outside of the complainant's patent, how much additional and greater market value, if any, they derived from being subjected to said patent process.' I find that said annealed wheels (using the term 'annealed' in the sense above indicated) could not have been made by any process outside of the complainant's patent. The application of extraneous heat in the manner described in the complainant's patent, and as used by the defendant in the manufacture of said wheels, retrieves the metal, in some degree, from the strain which begins the moment the wheels are cast, and, in so far as that is accomplished, the wheels are strengthened, and their liability to break overcome. This retrieving is accomplished only by the application of extraneous heat, and extraneous heat can not be applied without infringing complainant's patent. Precisely the wheels, then, that the defendant manufactured could not have been manufactured without using the process patented to the complainant, or its equivalent. And the defendant excepts to so much of said findings and report, as may be construed to mean that the 19,819 car-wheels made and sold by the defendant, had any greater market value by reason of the application to them of extraneous heat in the annealing pits, than they would have had if they had been left to cool there by a retention of their own heat, for the reason that the entire testimony taken pursuant to the order of the court, including the testimony of the complainant, shows that no additional market value is given to car-wheels by the application to them of extraneous heat in the process of cooling them."

The exception to the first finding must be overruled.

The construction of the patent which the finding assumes is the one given to it by Judge Leavitt, and it was concurred in by both the judges when the application for a preliminary injunction was heard. Whether the patent reaches further, and is also for each of the parts severally of the process which it describes, is a proposition, as before remarked, not necessary to be considered.

The exceptions to the 3d and 4th findings are also not well taken. Those findings, in my judgment, are fully sustained by the evidence.

The responses of the master, made at the request of the counsel of the parties, are, I think, correct. The exception to this part of the report is overruled.

The last exception is without foundation. The fact of which it is predicated does not exist. There is nothing in the report which can be construed to mean what is suggested. On the contrary, the master says: "But I find that wheels of the material, size, shape, and weight of those manufactured by the defendant, could have been manufactured without the use of extraneous heat, at less cost, by either of the methods described in finding V of this report, and that wheels so manufactured would have had the same market value in the market where defendant sold said 19,819 car-wheels, as if extraneous heat had been applied to them, as described in complainant's patent, or as used by the defendant."

It was strenuously insisted by the counsel for the defendant, at the hearing upon the exceptions, that reheating "to a point a little below that at which fusion commences," called for by the specification, would destroy the chill and ruin the wheels, as shown by the testimony of Major Wade and others, and that it is in proof by the complainant's own witnesses, that he did not himself carry the reheating to near so high a degree. This point was disposed of by Judge Leavitt in the construction which he gave to the patent. I regard that as conclusive at this stage of the case. If an error was committed it must be corrected by the appellate tribunal.

It was also insisted, with no less zeal, that reheating is shown by the testimony to be entirely useless, if not injurious. This point also is in effect disposed of by my learned brother. If this were not so, the defendant could not be permitted to avail himself of this defense. He used reheating in connection with slow cooling before the bill was filed and down to the hearing of the application for a preliminary injunction. He was then advised by the court that, in their opinion of the case as presented, he was violating the complainant's patent, but was permitted to go on until the final hearing upon the merits, under a bond to account for his profits. He did so go on until a perpetual injunction was granted. The 19,819 wheels were all finished by reheating as well as slow cooling. Under these circumstances he should be held to be estopped from insisting on this proposition. The evidence on the subject is contradictory, but every doubt should be resolved against him.

The report of the master, with the single exception before stated, is confirmed, and a final decree will be entered accordingly.

[Reversed by the supreme court in 14 Wall. (81 U. S.) 620.]