## Case No. 5,672.

### GRAHAM et al. v. MASON.

[5 Fish. Pat. Cas. 290; Holmes, 88; 1 O. G. 609.] [1]

Circuit Court, D. Massachusetts. Jan. 10, 1872.

PATENTS—INFRINGEMENT—PROFITS—DEDUCTION.

1. Where the patented invention consisted of a "bridle-motion" attachment for looms: Held, that the complainants had no right to any portion of the profits which the defendant made upon the looms to which the infringing mechanism was attached.

2. Where a patentee is entitled to profits, he is entitled to any profit the infringer has made by the unlicensed use of the contrivance included in the monopoly, and of that alone without regard to profit or loss on the whole structure or machine of which such mechanism forms a part, and without recoupment for losses on other infringing mechanisms made or sold.

3. Where the infringer has made a profit on one fraction of the mechanisms made and sold, but has met with losses on a larger fraction, so that a correct account of the whole operation would show a loss on the total manufacture; in such case, if the patentee, with a full knowledge of all the facts, should bring his bill declaring specifically for the infringement by the manufacture only of those specified mechanisms, in the making and selling of which the infringer had made profits, he would certainly be entitled to recover the profits thus made.

4. He is also entitled to such profits on a bill counting generally against the infringer, without offset or deduction for losses made in the manufacture and sale of other infringing mechanisms.

[1] [Reported by Samuel S. Fisher, Esq., and by Jabez S. Holmes, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 5 Fish. Pat. Cas. 290, and the statement is from Holmes, 88.]

5. Where the infringer made a part of the mechanism after a pattern of his own, which pattern, however, was an infringement of the patent: Held, that the question of profits was not affected by the fact that he could make the infringing contrivance cheaper than he could make the contrivance in the exact form and shape described in the patent.

6. The rule with regard to the renovation and repair of licensed machines does not apply to cases of infringement.

7. Where the defendant had sold repairs upon infringing mechanisms previously made and sold by him: Held, that he must account for profits on the repairs, as well as upon the original machines.

8. Where the defendant had given to complainants a valuable consideration, in full satisfaction of their rights, as against the parties who had purchased infringing machines from said defendant, but without prejudice to their rights as against the defendant himself: Held, that the amount thus paid was not a legitimate charge against the manufacture, and could not be deducted in accounting for profits.

Exceptions to the master's report of profits made by the defendant [William Mason] from his infringement of reissued letters patent [No. 2,626] granted Edmund H. Graham and Wanton Rouse, May 27, 1867. The original patent [No. 30,441] was granted to Graham October 16, 1860.

J. E. Maynadier, for complainants.
Benjamin Dean, for defendant.

SHEPLEY, Circuit Judge. The master reports in this case that since the date of the last reissue of the plaintiffs' letters patent, May 28, 1867, the defendant "has manufactured certain 'bridle-motions,'" being the same mechanism pronounced by the court to be an infringement of the plaintiffs' patent in this case; and he annexes an account of the profits resulting from this manufacture, in a schedule marked A, making a part of his report. The master further reports that the defendant made and sold said "bridle-motions" after said reissue, with and as a part of looms manufactured in his establishment; that the profits resulting from the manufacture of said "motions," so sold, have mingled with the profits of the manufacture of said looms. The cost of making said looms during the time under inquiry was $59.63, including said "bridle-motion." The cost of making said motions was forty-five and one-half cents each, or ninety-one cents for each loom. The profit resulting from the manufacture of said looms complete with said "bridle-motion" was $5.64 for each loom.

Defendant contended that the plaintiffs were entitled to claim, as profit resulting from the manufacture of said "bridle-motions" when sold with the looms and as a part thereof, only a sum that would bear the same proportion to said sum of $5.64, the whole profit, that ninety-one cents, the cost of the pair of "bridle-motions," would bear to $59.63, the cost of the whole loom, which would be eight and six-tenths (8 6-10) cents. The master declined to adopt that rule, and

on that ground the defendant excepts to his report.

In the opinion of the court, the rule contended for by defendant was clearly erroneous. The complainants had no right to any portion of the profits which the defendant made upon the looms to which the infringing mechanism was attached. Although in the case of Seymour v. McCormick, 16 How. [57 U. S.] 480, the court was called upon to adjudicate upon the question of damages in an action of law for the infringement of the patent, much of the reasoning of the court, and many of the distinctions there laid down, are equally applicable to the determination of questions of profits, recoverable by bill in equity. Especially applicable are the two illustrations adverted to by the distinguished justice of the supreme court of the United States, who delivered the opinion in that case. The unauthorized use of Stimpson's patent turnout on a railroad would not involve a liability to account for the profits of the road; nor could the profits made by the railroad in the case of the infringing turnout be measured by any ascertained ratio of the profits on the road. The patentee of a steam-whistle or a cut-off is not entitled to all the profits made on the manufacture of a locomotive engine by one who may have used his improvement without his license. So, if the manufacturer of the locomotive engine has sold it at a higher price than he would without the addition of the patented cut-off or whistle, or if he has in any way made a saving of expense or a profit to himself by the piracy of the patented improvement, the patentee is entitled to recover that profit without regard to the fact that the infringer has made no profit on the manufacture and sale of the whole machine to which he has attached the patented contrivance or mechanism.

In making up the account of profits, the master sometimes takes into account the cost of the whole number of infringing mechanisms or contrivances made by the defendant, and the proceeds of all the sales, and gives the patentee the net profits on the whole amount manufactured. This would be a correct rule in some cases, but it would not be just to the patentee in cases where the infringer had profits on one fraction of the whole number made and sold, and, through defective manufacture or unskillful management of his business, had met with losses on a larger fraction, so that a correct account of the whole operation would show a loss on the total manufacture. In such a case, if the patentee, with a full knowledge of all the facts, should bring his bill declaring specifically for the infringement only by the manufacture of those specified mechanisms in the making and selling of which the infringer had made profits. he would certainly be entitled to recover the profits thus made. It is not easy to see why he is not entitled to such profits in a bill counting generally against the infringer without offset or deduction for losses made in the manufacture and sale of other infringing mechanisms.

It must be apparent to the most superficial observer of the immense variety of patents issued every day, that there can not, in the nature of things, be any rule of damages or any rule for estimating profits which will equally apply to all cases. The mode of estimating profits or damages must necessarily depend on the peculiar nature of the monopoly granted. Seymour v. McCormick, before cited. Where the patentee is entitled to damages, the rule must be so modified as to afford him indemnity and give him the actual damage he has suffered by the infringement. Where he is entitled to profits, he is entitled to any profit the infringer has made by the unlicensed use of the contrivance included in the monopoly, and of that alone, without regard to profit or loss on the whole structure or machine of which such mechanism forms a part, and without recoupment for losses on other infringing mechanisms made or sold. The mode of computation adopted by the master in this case appears to have been correct and just; and the exception to his report, because he did not adopt the rule contended for by the defendant, is overruled.

Exception is also taken to the master's report because he reported $451.56 as the profits on 414 "bridle-motions," sold separately from looms, while defendant contends that a portion of those profits were due to the defendant's use of a pattern of his own making; also, because he reported as profits the sums of $218.89 and $576.75 on parts of "bridle-motions" sold to repair and restore other "bridle-motions," once estimated by the master, and also for the reason that the profits were increased by the use of a pattern made by the infringer. As the motions and parts of motions were all infringements, and the pattern made by the defendant was an infringement, the profits allowed were only on infringing mechanisms. It does not affect the question of profits because the infringer could make his infringing contrivance cheaper than he could make the contrivance in the exact form and shape described in the patent. Nor does the rule with regard to the renovation and repair of licensed machines apply to cases of infringement. The report of the master as to these items is sustained, and the exception overruled.

The remaining exception of the defendant to the master's report is because the master refused to allow, in reduction of the defendant's profits, the sum of one thousand dollars. paid by the defendant according to the terms of a paper annexed to the report, and marked "D." It appears that the patentee, being about to proceed against the persons and corporations who were using the "bridle-motions" purchased of Mason, the defendant; to prevent them from being harassed by such

suits, the defendant paid, and the complainants received, the sum of one thousand dollars in full satisfaction of the complainants' right to recover against the persons and corporations who were using the "bridle-motions" purchased of the defendant, and as a tariff for the future use of such motions. But it was expressly stipulated and agreed, in the paper marked "D," "that this settlement does not affect in any manner our (the complainants') right to recover profits or damages from Mr. Mason for his infringement of said patent, and that the suit of Graham v. Mason shall proceed precisely as if this settlement never had been made." The master was correct in refusing to deduct this sum, received under this agreement, from the profits, or adding it to the cost of manufacture. The exception is therefore overruled. The complainants' exception to the master's report is also overruled for reasons already stated.

The master's report is approved. Final decree to be drawn up and submitted to the court for the amount of profits ($3,329.40), according to schedule "A," annexed to the master's report, with costs. Decree accordingly.

[NOTE. See Case No. 5,671.
[A final decree having been entered in accordance with the opinion of the court as above expressed, an appeal therefrom was taken to the supreme court. Strong, Justice, in an opinion filed,—23 Wall. (90 U. S.) 261,—affirmed the principles enunciated in the court below concerning the validity of the patent and the fact of its infringement.
[The decree of the court below was reversed, however, on the ground of errors in the accounting. It was held that, as the defendant had cheapened the cost of producing the picker-staff motion by an invention of his own, he was entitled to a corresponding credit in the ascertainment of the profits which the master had not allowed him. Where he had sold the infringing picker-staff motion, both separately and in a form where they were attached to looms, it was held that the true measure of damages should be the price of those sold separately, and not a price proportioned to the increased value of the loom and attachment combined.
[The amount of the decree was fixed as follows:

| | | | | |
|---|---|---|---|---|
| Profits on bridle-motions sold on looms | | | | $1,819 50 |
| " | " | 414 pairs sold separately | | 243 26 |
| " | " | 297½ " " " | | 175 52 |
| " | " | beds sold | | 168 68 |
| " | " | rockers sold separately | | 471 49 |
| | | | | $2,877 45] |