PEERLESS BRICK MACH. CO. v. MIRACLE PRESSED STONE CO.

(Circuit Court, D. Minnesota, Fourth Division. September 30, 1910.)

1. PATENTS (§ 327*)—ACCOUNTING FOR INFRINGEMENT—EVIDENCE.
    A decree holding a patent valid necessarily determines that the invention covered thereby is both new and useful, and, on an accounting for infringement under such decree, evidence to show that the patented feature of the machine is of no utility is incompetent.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625; Dec. Dig. § 327.*]

2. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.
    Where the owner of a patent and the maker of an infringing machine were the only manufacturers having machines of the kind in the market, no competing machine being then known, the infringer is accountable for the entire profits made which must be attributed to the patented feature of the machine.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*
    Accounting by infringer for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

**3. PATENTS (§ 318\*)—INFRINGEMENT—ACCOUNTING FOR PROFITS.**

The testimony of an officer of a defendant corporation on an accounting for profits made from the sale of an infringing machine that some of the accounts for machines sold were not collectible was not sufficient in itself to require the deduction of the profits on account of such sales; there being no testimony of attempts to collect nor offer to assign any part of the accounts to complainant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.\*]

**4. PATENTS (§ 318\*)—INFRINGEMENT—DAMAGES RECOVERABLE.**

Where, on an accounting for profits made by defendant from the sale of an infringing machine, the profits made on certain sales made in direct competition with complainant were allowed, complainant was not entitled to also recover as damages the profits it would have made from the same sales on its own machines.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.\*]

In Equity. Suit by the Peerless Brick Machine Company against the Miracle Pressed Stone Company. On exceptions to master's report. Modified and confirmed.

Paul & Paul, for complainant.

Charles S. Burton and Offield, Towle & Linthicun, for defendant.

WILLARD, District Judge. By the interlocutory degree in this case the Nolan patent, No. 811,518, for what is called a one-man brick machine, was sustained as to claims 3, 4, 5, 7, 8, and 9. As to claim 6 it was held void. It was also held that the defendant had infringed the claims sustained, the court saying:

"The defendant's machine is conceived and carried out as an exact duplicate of complainant's machine and clearly infringes the invention. That was conceded in the argument, and certainly is manifest by an inspection of the machines."

After the injunction granted in the interlocutory decree was served, the defendant made and sold a machine which its president testified was the same as the old one, except as to the handles. These, instead of being level with the tops of the partition plates, were an inch or more below such tops, and were curved. In proceedings for violation of the injunction by the sale of the new machines, it was held that they did not infringe the Nolan patent. The case having been referred to a master to take an accounting, he reported that the profits realized by the defendant by the sale of the old machines amounted to $7,530.93, and that the complainant had suffered damages to the amount of $680. The defendant filed exceptions to this report, and the case is now before the court upon the hearing of such exceptions.

The first exception is as follows:

"The defendant excepts to the omission and substantial refusal of the master to find in accordance with the evidence produced before him that the invention covered by the claims of the complainant's patent in suit found to have been infringed by defendant's machine was of no intrinsic or commercial value and did not contribute anything whatever to the intrinsic or commercial value of the defendant's said machines."

This is, in effect, a claim that the patentable feature of the complainant's machine was of no use. In fact, in the fifth exception, the defendant complains of the master's refusal "to find that the patentable feature did not contribute to the utility of the defendant's infringing machines." An invention cannot be held valid unless it relates to a new and useful machine. By the decree holding this patent valid it was necessarily decided that the patented feature did have some utility. Evidence upon the accounting to show that it was useless was in my opinion incompetent. The court, moreover, held that the novel feature in the machine, and the one which the defendant now says was valueless, measured "the difference between success and failure in the brick-making operation."

By other exceptions to the report the defendant presents a claim which is thus expressed in his brief:

"It is only a statement of the plainest equity to say that, unless the patented feature has produced profits for the defendant, the complainant cannot recover any portion of the defendant's profits."

In support of this claim the following quotation is made from Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664:

"If the defendant gained any advantage by using the plaintiff's invention, that advantage is the measure of the profits to be accounted for."

Applying the rule indicated by the quotation, we are to see "if the defendant gained any advantage by using the plaintiff's invention." That it did use it and between January 6, 1906, and November 27, 1907, the date of the interlocutory decree, made and sold 163 machines which were copies of the complainant's machine, is admitted. It is also admitted that the profits which it realized from such sales were $7,530.93. What part of that sum of $7,530 was due to the complainant's invention? In other words, what part of that sum would the defendant have made if it had not used the complainant's invention, but had used some other? The answer is no part of it. Its president, Miracle, testified that during the time covered by the accounting there were only two machines in the market, his and the complainant's. As his was a copy of the complainant's, it follows that during that time there was only one machine which the defendant could use if it desired to go into the business of making "a one-man brick machine." It makes no claim that the Schwartz machine was in any way a competitor of the complainant's. Such claim could not well be sustained in view of the fact that the Schwartz machine could make one brick a day, while the complainant's could make over 2,000.

It was not at that time known that the handles of the Nolan machine could be lowered, and, as the defendant now claims, the machine then successfully operated. The defendant had no choice. It must either stay out of the manufacture of that kind of a machine, or it must use the complainant's invention. It chose the latter course, and it seems certain that, if it had not used the complainant's invention, it would not, and it could not have made $7,530 or any part of that sum in the manufacture of a brick machine of this class. What it did make was therefore due solely to the Nolan invention, and, according to the

**rule** quoted above by the defendant, it must account for all the profits. The eleventh exception is as follows:

"The defendant excepts to the refusal of the master to find that the complainant's proofs do not afford any means for segregating the profits due to the patented feature from the entire profits made by the defendant on the infringing machines sold."

In this class of cases the rule is thus stated by the Circuit Court of Appeals of this circuit in Brown v. Lanyon Zinc Company, 179 Fed. 309, on page 314:

"The true standard of comparison in any given case is that device or appliance which was open to the defendant and next to the plaintiff's invention could have been most advantageously used in the place of that invention at the time of the infringement."

The other device or appliance must, of course, have been known at the time of the infringement.

In Black v. Thorne, 111 U. S. 122, on pages 123 and 124, 4 Sup. Ct. 326 on page 327 (28 L. Ed. 372), the court said:

"The question, therefore, was what advantage in its production did the use of the improvements in burning wet tan have over other known methods in common use of producing the same result; that is, the same heat.  *  *  * If other methods in common use produce the same results, with equal facility and cost, the use of the patented invention cannot add to the gains of the infringer, or impair the just rewards of the inventor."

In Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, on page 453, 12 Sup. Ct. 49 on page 53 (35 L. Ed. 809), the court said:

"In regard to the holding by the master and the court that all the profits of the defendant from the valves it made and sold were to be attributed to the employment by it of the improvement covered by the patent of 1866, we hold that in view of what was determined in the former opinion of this court, and on the whole case, the safety valves known to the art and open to be used by the defendant would not do the same work as the Richardson invention covered by the patent of 1866, or have any commercial value, and that within the case of Garretson v. Clark, 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371], it appeared, by reliable and satisfactory evidence, that the profits made by the defendant are to be calculated in reference to the entire valve made and, sold by it, for the reason that the entire value of that valve as a marketable article is properly and legally attributable to the patented feature of the patent of 1866."

As has been said before, there was no one-man brick machine known between January 6, 1906, and November 27, 1907, which would do the same work as the Nolan invention. The defendant does not ask to have the Schwartz machine taken as a standard of comparison, and there is no other. The complainant is entitled, therefore, to recover all the profits.

At the hearing before the master, one of the officers of the defendant testified that some of the accounts arising from sales of the infringing machines were considered bad, and not collectible. These accounts amounted to $1,239. He testified that another account for $160 he considered doubtful. It is claimed by the defendant that complainant should not be allowed that part of these accounts which was profits. The only evidence given as to the value of the accounts is that quoted. It was not proven that any efforts had been made to cal-

lect the accounts, nor was there any offer on the part of the defendant to assign that part of the accounts which was profit, to the complainant. The exception to the refusal of the master to make this deduction cannot be sustained.

The master found that the profits realized by the defendant from the sale of 163 machines was $7,530.93. It was proven that as to 10 of these machines there was a competition between the complainant and the defendant for their sale, each party attempting to secure the proposed purchasers. In these attempts the defendant was successful, and the complainant claimed that, if it had been successful, it would have made $680 by the sale of these machines. The master allowed the defendant this sum as damages, and to this allowance the defendant excepted.

It seems quite apparent that the master allowed the complainant to recover twice for the same machines. The profits on the sale of these 10 machines are included in the sum of $7,530.93. The master allowed the complainant to recover them again as damages when he allowed the sum of $680. The damages referred to in section 4921 of the Revised Statutes (U. S. Comp. St. 1901, p. 3395) cannot be made to cover a case like this.

With this exception, the master's report is sustained.

Let a decree be entered in favor of the complainant for $7,530.93, with interest thereon from the 23d of August, 1910, and the costs.