## METALLIC RUBBER TIRE CO. v. HARTFORD RUBBER WORKS CO.

(District Court, D. Connecticut. February 19, 1917. Memorandum in Modification of Opinion, June 29, 1917.)

No. 1261.

1. PATENTS ⬤322—SUIT FOR INFRINGEMENT—REFERENCE FOR ACCOUNTING.
On a reference for an accounting for damages and profits in an infringement suit, the master cannot go into the general question of infringement, nor consider and decide the general scope of the patent, such questions having been foreclosed by the decree, but his duty is limited to a determination of the extent of the infringement and the particular infringing devices made or used by defendant.

2. PATENTS ⬤318(3)—SUIT ·FOR INFRINGEMENT—PROFITS RECOVERABLE.
On an accounting for infringement of a patent for a nonskidding rubber tire made so by stitching wire into the tread, complainant is entitled to recover all the profits made by defendant from the manufacture and sale of tires so made, since without the patented feature they would have had no market value for the new and specific purpose contemplated by the patentee.

3. PATENTS ⬤318(4)—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.
Where an infringer has so commingled patented and unpatented elements in his structure as to make it impossible to apportion the profits between them, the patentee is entitled to the entire profits.

4. PATENTS ⬤318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
Taxes and insurance paid by an infringer may only be deducted on an accounting for profits where the plant in question is devoted solely to the infringing business.

5. PATENTS ⬤318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
The cost of buildings and machinery, repairs, and plant depreciation, if allowable at all in an accounting for profits by an infringer where the

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plant is not used exclusively for infringing purposes, can only be considered where defendant furnishes evidence from which an apportionment may be made.

6. PATENTS ☞318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
On an accounting for profits by an infringer losses cannot be set up as an offset to sales made at a profit.

7. PATENTS ☞318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
Royalties paid by an infringer to patentees of other parts entering into the infringing article *held* erroneously allowed by the master under the facts of the particular case on an accounting for profits.

8. PATENTS ☞318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
Expenses incurred by an infringer in advertising all of its manufactures, and not limited to the infringing articles, cannot be allowed in an accounting for profits.

9. PATENTS ☞318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.
Various items *held* improperly allowed to an infringer on an accounting for profits either as not properly allowable or as not sufficiently established by the evidence.

10. PATENTS ☞318(2)—SUIT FOR INFRINGEMENT—DAMAGES RECOVERABLE.
Damages for infringement in addition to defendant's profits are allowed in equity only where the injury to complainant is plainly greater than the aggregate of such profits, and in case no profits are shown complainant is entitled to judgment for his damages, with interest, where an established royalty is shown.

In Equity. Suit by the Metallic Rubber Tire Company against the Hartford Rubber Works Company. On exceptions to master's report on accounting. Exceptions sustained, and case recommitted.

Alfred Wilkinson, of New York City, and George D. Watrous, of New Haven, Conn., for plaintiff.

Ernest Hopkinson, of New York City, for defendant.

THOMAS, District Judge. This case arises on exceptions to the report of the master, to whom the case was referred to state an account of damages and profits arising from the infringement of the patent in suit. The invention of the patent relates "to means for preventing the yielding tires of bicycles and other wheeled vehicles from slipping on the roadway, as they are particularly apt to do when the roadway is smooth," by embodying a wire in the tread of the tire. When the case came up for final hearing on pleadings and proofs, Judge Platt gave the patent a very narrow and restricted construction, and held the patent not infringed. This decision was reversed by the Circuit Court of Appeals upon appeal for the reason that the prevention of slipping was nowhere to be found in the prior art, either as an object of the prior patents relied on or as a result of the use of the structures therein specified, and that the substantial invention of the patent was of a high grade and of a functional and characteristic novelty, and consisted in the fact that exposed wire stitching makes hard bearings to prevent skidding or slipping. So construed, the patent was held to be valid and infringed, and the Circuit Court of Appeals was confirmed in this view because the infringement was not an accidental one, the defendant having originally been licensed under the patent, and having, after the expiration of the license, put out a

product which so closely simulated the patent structure that it was held to be an infringement.

[1] The decision of the Circuit Court of Appeals is binding, and the defendant's interests must be presumed to have been promoted by its use of the structure. The law is thoroughly settled that where a patent has been sustained by a court, the master, in a reference to determine the amount of damages and profits, cannot go into the general question of infringement, nor can he consider and decide the general scope and extent of the patent. All of these questions have been foreclosed by the decree sending the case to the master, and the master must simply examine and decide as to the extent of the infringement and as to the particular infringing device made or used or sold by the defendant. Turrill v. Illinois Cent. R. R., 5 Biss. 344, 24 Fed. Cas. 387; Whitney v. Mowry, 4 Fish. Pat. Cas. 207, 29 Fed. Cas. 1105. In view of the decision of the Circuit Court of Appeals, I am bound to hold that it was the patentee, and not the defendant, who did whatever has been done towards embodying wire in tires so as to produce hard bearings that will prevent skidding, and if the master in reaching his conclusion was governed or controlled, as he apparently was, by the view that it was not the patentee, but the defendant, who did this, he was, in my opinion, manifestly in error.

It is also clear that the "metallic wire interwoven with itself," and "parts of which lie substantially flush with the outer surfaces of the tread," must be held to be novel, essential and functional elements of the patented invention, and are embodied in the infringing articles made and sold by the defendant.

[2] The patent must be taken to be evidence of its utility, and the defendant, under the decision of the Circuit Court of Appeals, is estopped to deny that it is of value. Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604. 616, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939. Indeed, any evidence on the accounting tending to show the nonutility of the patented invention would be incompetent. Authorities supra; Peerless Brick Machine Co. v. Miracle Pressed Stone Co. (C. C.) 181 Fed. 526. Furthermore, the patented improvement must be held not to involve mere detail improvements. As construed by the Circuit Court of Appeals, it made a new tire out of an old one, and changed and improved the function of the old tire. A comparison between the tire of the patent and the old tire of the prior art cannot be taken, for the reason that the new tire has, for its characteristic function, nonskidding, something that the old tire did not have. Compared to the entire vehicle, the tire is a separate part, just as are the vehicle's lamps. Considered by itself, the tire, like the lamp, is a complete entity, a unit in itself, and a single and complete article of commerce, and for the new and specific purpose contemplated by the patentee in his invention the tire is useless without the improvement just as the improvement is useless without the tire. It therefore seems imperative to hold that the patented improvement has given the entire value to the combination, in which case plaintiff is entitled to recover all the profits unless the defendant can show, and the burden is on it, that a portion of them is the result of some noninfringing and valuable

improvement made by him. This rule is clearly stated in Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., supra. It is also stated by the Supreme Court in Manufacturing Co. v. Cowing, 105 U. S. 253, 255, 26 L. Ed. 987, as follows:

"If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public of supplying the demand for that use, then it is clear the infringer has by his infringement secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market."

The rule is also tersely stated by the Circuit Court of Appeals for the Third Circuit in Carborundum Co. v. Electric Smelting & Aluminum Co., 203 Fed. 976, 982, 122 C. C. A. 276, 282, as follows:

"It is well settled that, in the case of mechanical inventions, where the infringed patent covers a mere improvement upon mechanism before known and open to the defendant to use, the complainant can recover only the excess of such profits as have been realized through the use of the improvement over what the defendant might have made by the use of such mechanism without such improvement. But it is equally well settled, that where the entire commercial value of the mechanism arises from the patented improvement the owner of the patent will be entitled to recover from the infringer the total profits derived from the manufacture, use or sale, of such mechanism. Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809; Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222 [41 L. R. A. (N. S.) 653]; Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987; Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011; Maimin v. Union Special Mach. Co., 187 Fed. 123, 109 C. C. A. 41; Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250."

And, as is pointed out in the Carborundum Case, supra, a patentee may be entitled to the entire profits the infringer has made in the market even though the mechanism without the patented improvement might not be wholly useless.

[3] Neither is the fact, to which the master seems to attach importance, that the plaintiff has not used the patented improvement material. Carborundum Co. v. Electric Smelting & Aluminum Co., supra. Moreover, there is evidence that the conduct of the defendant, by commingling the elements of the combination, has been such as to preclude the belief that it has derived no advantage from the use of the plaintiff's invention, and may have made it impossible for the plaintiff to meet the requirements of an apportionment. If such is the case, the law requires the entire inseparable profit to be given to the patentee. Westinghouse Co. v. Wagner Mfg. Co., supra, 225 U. S. 618, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Hamilton Shoe Co. v. Wolf Bros., 240 U. S. 251, 261, 36 Sup. Ct. 269, 60 L. Ed. 629.

There are separate items of profits which the master has disallowed which seem to require specific attention.

[4] I. *Taxes and Insurance.*—The manufacture by the defendant of the infringing tires was a single infringement outside of and detached from its regular business. Taxes and insurance, both for fire and labor, were therefore improperly allowed by the master. Such charges are only allowed where the plant in question is devoted solely to the infringing business. Winchester Repeating Arms Co. v. American Buckle & Cartridge Co. (C. C.) 62 Fed. 278; Piaget Novelty Co.

v. Headley (C. C.) 123 Fed. 897; National Folding Box & Paper Co. v. Dayton Paper Novelty Co. (C. C.) 95 Fed. 991; Sayre v. Scott, 55 Fed. 971, 975, 5 C. C. A. 366.

[5] II. *Total Repairs, Building, and Machinery and Plant Depreciation.*—This item, like taxes and insurance, relate to the plant and its use. These items stand upon the same footing as taxes and insurance, and can only be allowed when the building and plant are specially built for and used only for infringing purposes. This was distinctly held in this district by Judge Nathaniel Shipman in Winchester Repeating Arms Co. v. American Buckle & Cartridge Co., supra. Moreover, it is impossible to estimate with accuracy, for there is no help to be found in defendant's testimony, how much of these expenses can be charged to the defendant's business of manufacturing the infringing devices. I do not feel warranted in sustaining any allowance on this item, certainly without some attempt on the part of the defendant to make an apportionment, and so have concluded that this question ought to be referred again to the master.

[6] III. *Defective and Guaranteed Tires.*—The master has allowed to the infringer a lump item for sales and replacements of defective tires made at a loss or supposed to be made at a loss. This ruling cannot be sustained. Losses cannot be set up as an offset to sales made at a profit; every infringement must be treated by itself, if it resulted in profit. That profit belongs to the patentee, and if it resulted in loss, that loss must be borne by the infringer. Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 455, 12 Sup. Ct. 49, 35 L. Ed. 809; Graham v. Mason, 1 Holmes, 88, 10 Fed. Cas. 930; Steam Stone Cutter Co. v. Windsor Mfg. Co., 17 Blatchf. 24, Fed. Cas. No. 13,335.

[7] IV. *Royalties.*—The master deducted royalty payments for other patents used in the infringing structures than that of the patent in suit. If these payments were made for royalties covering the addition of substantially different and noninfringing elements to the structure of a limited patent, they should be allowed; but under the construction put upon the patent by the Circuit Court of Appeals I do not see how they can be so regarded; hence I feel bound to hold that the master erred in his allowance for royalties.

The payment of Midgely royalties was not on account of any existing patent. These payments were made by Midgely for the purpose of obtaining a patent on the infringing structure, and his original broad claim was disallowed by the Patent Office as being anticipated by the patent in suit, and it was only granted for a slight change in form, and the Circuit Court of Appeals said of this change that:

"We fail to see that it is material whether the result be obtained by crinkled or coiled wires."

The "Dunlop royalties" were for patents which the defendant still owns. The defendant has failed to show that any advantage resulted to it from the use of the Dunlop patents, and the burden was on it to so show; moreover, the decision of the Circuit Court of Appeals proceeds upon the theory that the entire value of the infringing tires made, used and sold by the defendant was due to the invention covered by the patent in suit. This item should therefore be disallowed up-

on the authority of Sayre v. Scott, supra, 55 Fed. 976, 5 C. C. A. 366; Crosby Valve Co. v. Safety Valve Co., supra; and Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.

V. *G. & J. Clincher Royalties.*—These were for licenses for 24 patents, two of which expired prior to the commencement of the defendant's infringement and one, one year after there had been about a year of good infringing sales. The fourth expired June 4, 1908. The defendant has offered no proof as to whether the invention of any of these 24 patents was embodied in the infringing tires. The burden was clearly upon the defendant to make such proof, and in the absence of such proof, especially in view of the decision of the Circuit Court of Appeals, I must hold that the master improperly allowed these items.

VI. *Rubber Depreciation.*—This item taken into the income account is for a lumping sum, and the explanation given by the defendant is, to say the least, meager and unsatisfactory, and consists solely of hearsay testimony as to the condition of the rubber market. I fail to see in the record that any evidence has been introduced testing the accuracy of this item as the law requires. Sayre v. Scott, supra. And as was stated in Byerly v. Sun Co. (D. C.) 226 Fed. 759, at page 765, "the vagaries of the market" at the precise time of its use cannot be followed in an accounting.

[8] VII. *Advertising Expenses.*—The documents before the master seem to show that the defendant has charged all of its advertising expenditures of every sort, including those which advertised the infringing tires and those which advertised the defendant's other products to one account. There should be some apportionment, as it is not fair to load on to the business of the infringing tires anything except that which assisted the selling of those tires.

[9] VIII. There are several other items which seem to me at least questionable:

*Patent and Legal Expenses.*—For this no allowance can be made. National Folding Box & Paper Co. v. Dayton Paper Novelty Co. (C. C.) 95 Fed. 991, 994; Piaget Novelty Co. v. Headley, supra.

*General Expenses.*—This is a lumping sum, and its items are not satisfactorily explained.

*Travel—General.*—About this there is no definite proof to show whether it was connected with the defendant's manufacture and sale of the infringing tires or whether it related to its other business.

*Bad Debts.*—These relate to certain specific tires which were sold and not collected for. This item is not allowable for the reasons already indicated. Crosby Valve Co. v. Safety Valve Co., supra; Peerless Brick Machine Co. v. Miracle Pressed Stone Co., supra. There is no explanation as to what is meant by "Bad Debts."

In Peerless Brick Machine Co. v. Miracle Pressed Stone Co., supra, it was held that the testimony of an officer of a defendant corporation on an accounting for profits made from the sale of an infringing machine that some of the accounts for machines sold were not collectible was not sufficient in itself to require the profits on account of such sales; there being no testimony of attempts to collect or offer to

assign any part of the accounts to the plaintiff. I feel bound to follow this ruling.

The item of "Philadelphia fire loss" is a mere book entry unexplained, and does not carry its own proof. There should be further testimony showing the amount of insurance and whether the fire was an actual loss, and also whether the burning of a building in Philadelphia could have any bearing on the cost of tires made in Hartford.

A more serious question arises as to whether the master erred in deducting the profits on tires identical with the infringing structures, but which did not have the interwoven or embedded wire of the patent in suit. I think this ruling should be sustained for the reason that the plain-tread tire was and is satisfactorily used without the wire of the patent in suit, and such tires would not have infringed. Such a view is in no way inconsistent with the conclusions as to the other items. To what extent this may affect the final result can best be determined on the recasting of the report, which should be done in accordance with the views herein expressed.

The master has disallowed any claim for substantial damages. The claim for damages, in addition to profits, is only allowed in equity in those cases where the injury to the plaintiff sustained from the infringement is plainly greater than the aggregate profits made by the infringer. Coupe v. Royer, 155 U. S. 565, 582, 15 Sup. Ct. 199, 39 L. Ed. 263. This practice requires that the master in making his report should state the evidence and findings and conclusions upon each line of evidence separately and distinct from each other, but this he has not done. The measure of damage, outside of profits, would in the case of an established royalty be the license fee. Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392; Birdsall v. Coolidge, 93 U. S. 64, 23 L. Ed. 802. In this case there is a license agreement between the parties, but it includes other patents than the one in suit; and it would clearly seem that it is incumbent upon the plaintiff to show how much of the license fee provided for in the license agreement was paid for the use of the monopoly of the patent in suit and how much for the use of the other patents. Clearly, a royalty which is reserved for several patents is not a proper one to measure the damage for the unlawful use of one of them after the license has expired, but if it is shown how much of the established license fee was paid for the use of the patent in suit, there is no reason why it should not be received as a proper measure of damages.

[10] If the account shows no profits, but does show damages, the plaintiff will be entitled to a judgment for damages (Marsh v. Seymour, 97 U. S. 348, 24 L. Ed. 963), and interest from the time of the infringement, for the reason that an established royalty makes the damages liquidated (Consolidated Rubber Tire Co. v. Diamond Rubber Co. [D. C.] 226 Fed. 455, 463; Locomotive Safety Truck Co. v. Pennsylvania Railroad Co. [C. C.] 2 Fed. 677, 683; Creamer v. Bowers [C. C.] 35 Fed. 206, 210). If the profits are found to exceed the damages, the plaintiff will be entitled to a judgment for the profits, but not for damages. Emigh v. B. & O. R. Co. (C. C.) 6 Fed. 283. If the accounting shows both profits and damages and also shows the latter

to equal or exceed the former, the plaintiff will be entitled to a judgment for the amount of the damages (Birdsall v. Coolidge, supra; Star Salt Caster Co. v. Crossman, 4 Ban. & A. 566, 22 Fed. Cas. 1,132; Child v. Boston & Fairhaven Iron Works [C. C.] 19 Fed. 258; Simpson v. Davis [C. C.] 22 Fed. 444), or for any sum not in excess of treble that amount in the discretion of the court (U. S. R. S. § 4921 [Comp. St. 1916, § 9467]). No case can properly be made upon which the court can exercise such discretion on the report as made.

In view of all the circumstances of the case, the exceptions are sustained, and the case recommitted to the master to state an account in accordance with the views herein expressed.

So ordered.

### Memorandum in Modification of Opinion.

After the opinion was filed the plaintiff orally directed the court's attention to the following paragraph:

"A serious question arises as to whether the master erred in deducting the profits on the tires identical with the infringing construction, but which did not have the interwoven or embedded wire of the patent in suit. I think this ruling should be sustained for the reason that the plain tread tire was and is satisfactorily used without the wire of the patent in suit, and such tires would not have infringed"

—and claimed that said paragraph was inconsistent with the general conclusion reached in the earlier part of the opinion. No formal motion was made, nor was a motion for rehearing filed, but after correspondence with counsel on both sides a date was set and hearing had as to whether the paragraph above quoted should be stricken from the original opinion or whether the paragraph should stand.

The plaintiff contends that the quoted paragraph takes away the force of the ruling contained in the opinion, which may be briefly stated to be as follows:

"A comparison between the tire of the patent and the old tire of the prior art cannot be taken, for the reason that the new tire has for its characteristic function—nonskidding—something that the old tire did not have. The tire is a complete entity—a unit in itself—and a single and complete article, and for the new and specific purpose contemplated by the patentee the tire is useless without the improvement. It therefore seems imperative to hold that the patented improvement has given the entire value to the combination in which case the plaintiff is entitled to recover all the profits, unless the defendant can show that a portion of them is the result of some noninfringing and valuable improvement made by it."

The defendant contends that the paragraph now under consideration is a correct statement of the law and that it should not be stricken from the original opinion as filed, and has filed an extended brief in support of its contention. While it is true "that the plain tread tire was and is satisfactorily used without the wire of the patent in suit," yet it is, as I view it and have held, equally true that *"for the new and specific purpose contemplated by the patentee* the tire is useless without the improvement."

It was my intention to hold that the plaintiff is entitled to recover of the defendant all the profits which have been shown to have been

received by the defendant on the manufacture and sale of all tires made by the defendant with the patent in suit incorporated into or built into them, because those tires containing the Adams device, which was for a *"new and specific purpose,"* were useless without the improvement for the *particular purpose* for which they were manufactured, to wit, nonskidding, and that while a plain tread tire without the wire was salable for its purpose, yet it could not be fairly said to this plaintiff that it could not recover all the profits received by the defendant on all tires made by the patented improvement which is a permanently incorporated improvement and impossible of removal or detachment.

Whether right or wrong in my conclusion, I feel bound to hold and do hold that the instant case falls within the second rule stated by the Supreme Court in Westinghouse v. Wagner, 225 U. S. on page 614, 32 Sup. Ct. 694, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, which is found in the following language:

"Where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits."

This is the rule to apply here. The master held that:

"This accounting therefore falls under division 'd' given in Westinghouse Co. v. Wagner, in which as the court said: 'The plaintiff's patent is only a part of the machine, and created only a part of the profits—if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains.'"

But the Supreme Court said on page 615 of 225 U. S., on page 694 of 32 Sup. Ct. (56 L. Ed. 1222, 41 L. R. A. [N. S.] 653):

"The real controversy arises in applying this principle to those cases where it is impossible to separate the single profit into its component parts."

Here I have felt strongly that the wire of the patent made the tire salable "for the new and specific purpose contemplated," viz. a nonskid tire. There were different kinds of nonskid tires on the market, and the nonskid property of a tire was being featured by the different tire manufacturers, and it was that feature which attracted a purchaser who was bent on having a nonskid tire. To say to a purchaser who wanted a nonskid tire, in the words of the special master, as stated in his report:

"In size and component parts it [is] was exactly similar to the plain-tread tire, excepting for imbedding of the wires in the tread portions. The added wire coil could be left out of the tread, and there would be left a serviceable, efficient, and salable plain-tread tire"

—is entirely beside the question, and, if carried to its logical conclusion and adopted by every purchaser as conclusive, would result in no manufacturing or sale at all of nonskid tires with the patented feature embodied in it. It requires no argument to prove that there would be, if the wire of the patent were left out of the tire, a "serviceable, efficient, and salable plain-tread tire"; for, if the patent were eliminated in the construction of a nonskid automobile tire, we would have as the result of such elimination a plain-tread tire. But the wire of the patent in suit made the tire answer the purpose for which it was manufactured, sold to the jobbers, and purchased by the consuming pub-

lic. In my opinion it gave each particular tire its full value "for the new and specific purpose," and without it the tire would have no value "for the new and specific purpose" for which it was manufactured and sold.

Such was the conclusion of Judge Sanborn in Van Brunt v. La Crosse Plow Co. (D. C.) 208 Fed. 281, in applying the doctrine of the Westinghouse Case, for on page 285 he said:

"The case then goes on to hold that, while this burden is on the plaintiff, he meets and overcomes it, and, casts it upon the defendant, by showing confusion of profits by the act of defendant. When the plaintiff, by data furnished by defendant, taken from its books, or by other proof, shows that no attempt has been made, or perhaps would be possible, to keep separate the profits due to defendant's improvements from those due to the patented feature taken and infringed by defendant, the latter, even though acting in perfect good faith  *  *  *  (which was not the case here), must stand the loss. The profits due to plaintiff's patent and defendant's patents cannot be separated, never could have been separated, by the very nature of the case, because no one can tell just what feature of the seeder influenced a purchaser to buy. But since it turns out that defendant was a wrongdoer, even though an innocent one (which was not the case here), the loss must fall upon it, rather than the plaintiff, whose property was wrongfully appropriated. This is the meaning of the Westinghouse Case, as applied to the case at bar. And the same rule applies to the whole machine, unless a fair apportionment can be made from the evidence between the furrow opener and the balance of the seeder."

And on page 287 the court quoted from Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987, as follows:

"If the improvement is required to adapt the machine to a *particular use*, and there is no other way open to the public of supplying the demand for *that use*, then it is clear that the infringer has by his infringement secured the advantages of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market."

And then said:

"It is entirely settled by these cases that where plaintiff's patent is only part of a machine, but 'the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature,' then the profits are to be calculated on the whole machine. No standard of comparison under these conditions can exist."

So, also, Judge Ray in Decker v. Smith (D. C.) 225 Fed. 776, for on page 783 he said:

"In getting at damages and profits in patent cases the ordinary rules of evidence should be applied so far as applicable, and no arbitrary rules should be allowed to prevail over the clear equities of the case. But an infringer, so adjudged, is held to be a trustee for the owner of the patent infringed, and, if he has so intermixed and confused the profits received with other matters that either he or the one whose rights have been invaded, and disregarded must bear a loss, that loss must be on the infringer. This has been decided many times."

Other passages from the Westinghouse Case are illuminating, and may, I think, with some force be particularly apposite to the case at bar. For instance, on page 615 of 225 U. S., on page 694 of 32 Sup. Ct. (56 L. Ed. 1222, 41 L. R. A. [N. S.] 653), the Supreme Court said:

"In considering the question presented by the record here, it is to be borne in mind that Congress has legislated (Rev. Stat. § 4921) with a view of affording the patentee ample redress against the infringer. It not only makes the latter liable for damages—sometimes threefold damages—but for all profits derived from the use or sale of plaintiff's intervention. The rule as to the burden of proof has, however, been so applied that this statutory right has been often nullified by those infringers who had ingenuity enough to smother the patent with improvements belonging to themselves or to third persons. In such cases, the greater the wrong the greater the immunity; the greater the number of improvements the greater the difficulty of separating the profits. And if that difficulty could only be converted into an impossibility the defendant retained all of the gains, because the injured patentee could not separate what the guilty infringer had made impossible of separation. Manifestly such consequences demonstrate that either the rule or its application is wrong. The rule is sound, for it but announces the general proposition that the plaintiff must prove its case and carry the burden imposed by law upon every person seeking to recover money or property from another. But the principle must not be pressed so far as to override others equally important in the administration of justice. It may serve to illustrate the rule and its limitations, if, at the risk of stating the obvious, we apply it to the various steps of this case."

And again the passage from the opinion found on page 620 of 225 U. S., on page 696 of 32 Sup. Ct. (56 L. Ed. 1222, 41 L. R. A. [N. S.] 653), is, in my opinion, particularly fitting to the position in which the defendant is in, especially in view of the facts established by the testimony. The court there said:

"6. But when a case of confusion does appear, when it is impossible to make a mathematical or approximate apportionment, then from the very necessity of the case one party or the other must secure the entire fund. It must be kept by the infringer, or it must be awarded by law to the patentee. On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take the advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee and by judicial decree repeal the provision of Rev. Stat. § 4921, which declares that in case of infringement the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.'"

Upon further consideration of the nature of this case, and holding that rule "b" applies, and not rule "d," and that there may be no misunderstanding before the master when the case is remanded and further proceedings had before him, the paragraph under discussion as contained in the original opinion may be stricken out.

The exceptions are sustained, and the case remanded to the master, to state an account in accordance with the views expressed in the original opinion as amended by this memorandum. At oral argument upon this modification an interlocutory decree was submitted to the court for signature; but the better practice, it seems to me, is to await the further report of the master, and upon the filing of that report, and the proceedings taken subsequent thereto, counsel may then take such steps respecting the decree, and what shall be embodied in it, as may then seem proper.

Ordered accordingly.