THE LOCOMOTIVE SAFETY TRUCK COMPANY *v.* THE PENNSYL-VANIA RAILROAD COMPANY.*

*(Circuit Court, E. D. Pennsylvania.   June 8, 1880.*

PATENT—INFRINGEMENT—PROFITS—WHEN NOT RECOVERABLE—MEASURE OF DAMAGES WHEN NO PROFITS ARE SHOWN.—When a patentee cannot show an absolute advantage in the use of his patent over results which could be reached by other processes in common and unrestricted use, he cannot recover anything from an infringer as profits, although he may exact such damages as will compensate him for the injury caused by the infringement.

SAME—METHOD OF ASCERTAINING PROFITS—COMPARISON OF ADVANTAGES. In determining whether profits have been realized by the infringer the comparison of advantages should be made, not between the patentee's invention and the process previously used by the infringer, but between the patentee's invention and such other known process then in unrestricted use as would best accomplish the same result.

*Reported by Frank P Prichard, Esq., of the Philadelphia Bar.

SAME—STATE OF THE ART.—In such case the state of the art when the invention was made is always to be considered.

SAME—PROFITS INCAPABLE OF MEASUREMENT.—Although an infringer may be answerable in damages, he is not to be held liable for profits, unless there is some satisfactory evidence from which the value of the advantage derived from the use of the invention can be measured.

SAME—COMBINATION OF LOCOMOTIVE WITH SWING-TRUCK.—The use of a combination of a swing-truck with a locomotive having flanges on all its driving-wheels, not shown to have any advantage over the use of a locomotive with plain forward driving-wheels and a rigid truck.

DAMAGES—STANDARD OF—ROYALTIES.—Where a patentee had a fixed royalty for the use of his patent, *held*, that this was a proper standard by which to measure his damages from an infringement.

SAME—INTEREST ON ROYALTIES.—In such case, in estimating the damages, interest should be added to the royalties from the time of infringement to the date of the decree.

Exceptions to the report of a master appointed to state an account of the profits realized by defendants by reason of an infringement of complainants' patent, and also to assess the damages caused by such infringement.

The master (Robert N. Willson, Esq.) reported that complainants' patent was for a combination of a swing-truck with a locomotive; that the evidence showed that prior to using such invention defendants had used locomotives having a rigid truck and flanged driving-wheels; that the advantages derived from the use of complainants' invention could have been obtained by the use of a locomotive having a rigid truck and having no flanges on its forward driving-wheels, and that this latter form of locomotive was then in common and unrestricted use. He also reported that in estimating profits the comparison of advantages should be made between complainants' invention and an engine having a rigid truck and forward driving-wheels without flanges; that complainants had scarcely attempted to meet such a comparison, but relied, apparently, upon a comparison with a locomotive having all its driving-wheels flanged, and that upon the evidence he was unable to find that defendants had realized any profits. He also reported that complainants had a fixed royalty of $100 per engine for the use of their invention, and adopting this as a measure of damages, and adding interest, he assessed the damages at $89,644. Both parties filed exceptions.

*S. S. Hollingsworth* and *Charles F. Blake,* for complainants.
*Chapman Biddle,* for respondents.

STRONG, J. After a careful examination of the evidence submitted to the master, including both the testimony and the exhibits, I have come to the conclusion that none of the exceptions filed to his report, by the complainants or by the defendants, ought to be sustained. The report is an intelligent and discriminating deduction from the evidence, and the conclusions which the master has reached are strongly fortified by his reasoning. I can add little to what he has said beyond an expression of my concurrence.

In the endeavor to ascertain the profits, if any, which the defendants derived from the use of the patented invention, both parties agreed during the argument that the rule stated in *Mowry* v. *Whitney,* 14 Wall. 620, and repeated in subsequent cases, is to be followed. That rule is that the measure of profits, as distinguished from damages, for which an infringer is responsible, is the aggregate of gains or savings which he has made from the use of the patented invention, above what he could have made, in doing the same work, from the use of any other device or process existing at the time, capable of accomplishing the same purpose, or attaining the same result, and free, or open, to public use.

This rule is founded upon the soundest reason. It is only that which was previously not known—or, in other words, it is only the addition to human knowledge and convenience which a patentee has made—that he can be said to own. The patent laws give him an exclusive right to that addition, and to the advantages resulting from it, and to nothing more. Undoubtedly, it may be a benefit to the community to have two modes of doing certain work, instead of one, both equally economical and convenient, accomplishing the same result, and each still patentable; but, as was well remarked by the master: "Unless a patentee can show such an absolute advantage in the use of his patent over results which could be reached by other processes in common and unrestricted use, there has been nothing really gained, no advance made by his invention. In such a case, though he may maintain a

monopoly over his patented machine, process or combination, and exact such damages as he may be able to show he has suffered from an infringer, he cannot claim any portion of what has been realized as profits in any sense owing or due to him, for the reason that the infringer could just as well have obtained such product, or result, without his aid, or the benefit of his work or ideas."

The rule stated in *Mowry* v. *Whitney* was applied by the master to the facts as they appeared in the case. But he found, after comparison of the patented invention with other devices in use before the invention was made, and ever since in use,—devices open to the public, and free to be used by anybody,—that the defendants had received no gains, profits or advantages by reason of their infringement of the complainants' letters patent, and that no such gains, profits or advantages had accrued to them by reason thereof. In this finding I concur. The evidence certainly established that a locomotive with plain forward driving-wheels,—that is, with its forward driving-wheels without flanges,—and with a rigid truck, is in all respects quite as convenient and economical as is a locomotive with such a truck as the patent describes. There is no gain, profit or advantage in the use of one over the use of the other. The former was in common use when the complainants' patent was granted. It was free to be used by the defendants. But the complainants argue that because it was not employed by the defendants when they began to use the combination of the swinging truck with a locomotive, the comparison of advantages should be made with an engine having flanged forward driving-wheels and a rigid truck.

I do not assent to this view. The combination protected by the patent is not that of a swinging truck, with a particular kind of engine, such as one having flanged forward driving-wheels. It is a combination of such a truck with any locomotive for railroad uses. It is the advantage of such a combination to which the patentee is entitled. Certainly, if the defendants had never used any locomotive when they began to employ the complainants' invention, they would,

according to the rule in *Mowry* v. *Whitney*, be liable only for the advantage they had in that use over what they would have had in case they had used a combination of an engine with forward driving-wheels without flanges, and with a rigid truck. I cannot see that what they had in use in 1866 has any bearing upon their liability to account for profits made in 1867 or 1868, when they resorted to the complainants' invention. If a man, making boards by hewing them from logs by an adze, changes his mode of manufacture to the unlicensed use of a patent rotating saw, it would be a strange doctrine to hold that he is responsible for all the increased advantages of one mode of manufacture over the other. Neither *Mowry* v. *Whitney*, nor any other decision with which I am acquainted, justifies any such accounting. Mowry was held liable to account only for the advantage his use of Whitney's process gave him over other known modes of making car wheels, equally valuable and salable in the market, though it did not appear those other modes had ever been used by the infringer. In accounting for profits, as such, for which an infringer is liable, the state of the art when the invention was made is always to be considered.

But were it conceded that the defendants in this case did secure some advantage from the use of the complainants' patented device, instead of other devices they were at liberty to use, (which I am unable to perceive,) I think there is not sufficient in the evidence to enable me to make any reliable estimate of the value of that advantage. The defendants are not to be held liable for profits in any amount unless there is some satisfactory evidence that profits to that amount were made, though they may be answerable in damages for their invasion of the complainants' right. Some witnesses, it is true, have given estimates of the saving of wear by the use of the swinging truck. But an examination of their testimony convinces me that their estimates are mere guesses, without any reliable basis. There are no facts in evidence to justify them. Besides, the comparisons upon which they rest their conjectures are inadmissible in view of what I have said. They rest upon the supposed wear of tires or flanges under different conditions

from those existing when plain forward drivers are used. In regard to the alleged additional safety attendant upon the use of the swing trucks, there is the same difficulty. I am not convinced that there is any increased safety in running locomotives with it. But if there is, there is no meter by which the value of that advantage, as a profit, can be measured, and during the argument the complainants disavowed any claim for profits on that account.

The case, therefore, is one for damages only. The evidence shows to my satisfaction that the complainants had a fixed royalty of $100 for each locomotive to which the invention was applied. The master adopted that as a proper standard for estimating the damages. In this I think he was justified by the case of *Birdsall* v. *Coolidge*, 3 Otto, 64. That, it is true, was an action at law. But there is no conceivable reason why the damages sustained by a patentee from the infringement of his patent are not the same whether he proceeds at law or in equity. Applying this standard, and adding interest to the royalties, the master has reported the damages to be $89,644, the invention having been used by the defendants in 614 engines. That sum will certainly cover all the damages the complainants have sustained, and all possible profits the defendants have made, if they made any.

A doubt arose in my mind at first whether interest should have been added by the master to the aggregate of the royalties, but further reflection has removed the doubt. As I have noticed, the royalties were allowed as the measure of damages. It is doubtless the general rule that interest prior to the final decree is not to be allowed upon profits or damages, because, until the decree, they are unliquidated. *Mowry* v. *Whitney*, 14 Wall. 653. But the rule is not without exceptions. We said in that case: "We will not say that, in no possible case, can interest be allowed." The present seems to be one not within the reason of the rule, and therefore proper for an exception. The damages cannot be said to have been unliquidated from the first. The amount of the royalty was fixed when the defendants began to use the inven-

-tion. To that amount complainants were entitled at that time, and interest, therefore, is only compensation for the delay of payment of a liquidated sum. Besides, no exception has been specifically filed to the allowance of interest by the master.

This is all I need say of the case. All the exceptions filed to the master's report are overruled, and his report is confirmed. Let a final decree, accordingly, be prepared.