## DECKER v. SMITH.

(District Court, N. D. New York. August 16, 1915.)

1. EQUITY ⬡⟿410—MASTER'S REPORT—EXCEPTIONS—TIME TO FILE.

Under Equity Rule 66 (193 Fed. xxxvii, 112 C. C. A. xxxvii), requiring the master to return his report into the clerk's office, and giving the parties 20 days from the time of the filing of the report to file exceptions thereto, exceptions to the report must be filed within the time fixed, and exceptions to the master's draft or proposed report merely give him an opportunity to correct his report and are insufficient to present any objections to the report.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 905–919; Dec. Dig. ⬡⟿410.]

2. PATENTS ⬡⟿226—INFRINGEMENT—TORTS.

One guilty of infringing a patent is a wrongdoer, and his acts are a tort.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. ⬡⟿226.]

3. PATENTS ⬡⟿312—INFRINGEMENT—ACCOUNTING—BURDEN OF PROOF.

On an accounting for infringing a patent, complainant has in the first instance the burden of proving profits made by defendant; but, when he has shown the profits, defendant, to escape liability therefor, has the burden of showing by clear and satisfactory proof that he incurred and paid expenses in making and selling the infringing goods for which a deduction should be made.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ⬡⟿312.]

4. PATENTS ⬡⟿318—INFRINGEMENT—ACCOUNTING—LIABILITIES.

Where an infringer of a patent manufactured and sold the patented article and nonpatented articles, but failed to keep books of accounts or memoranda enabling him or others to separate the expense of making and selling the infringing article from that of the others, but so commingled his manufacturing and selling business and the expenses thereof as to make it impossible to separate the expense of the infringing business from that of the other, he could not be allowed a deduction from the gross profits on sales of infringing goods on mere surmise, speculation, or estimates, or on mere opinion evidence based on general recollection of time actually spent and salaries or wages paid in making and selling the infringing article.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬡⟿318.]

5. PATENTS ⬡⟿318—INFRINGEMENT—ACCOUNTING—PROFITS.

As a complainant seeking damages from defendant for infringing his patent can recover only the profits on infringing goods sold by defendant, the latter cannot offset or counterclaim expenses incurred and paid in attempting to make sales on infringing goods which were not consummated, and the expense of an experimental trip of an employé of defendant is not an expense of selling infringing goods in the absence of any proof of any sale.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬡⟿318.]

6. PATENTS ⬡⟿312—INFRINGEMENT—DAMAGES AND PROFITS.

In ascertaining damages and profits in patent cases, the ordinary rules of evidence should be applied as far as applicable, but no arbitrary rule should be allowed to prevail over the clear equities of the case.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. ⬡⟿312.]

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. PATENTS ⟨⇒318—INFRINGEMENT—INFRINGER AS TRUSTEE.

    An infringer of a patent is a trustee for the owner, and, where he has so confused the profits received with other matters that either he or the owner must bear a loss, the loss must fall on the infringer.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⟨⇒318.]

In Equity. Suit by William M. Decker against De Wane B. Smith. Exceptions to master's report fixing damages for infringement of a patent, and motion by defendant to strike from the files exceptions filed by complainant, as filed too late. Report of master confirmed, and exceptions overruled, and exceptions of complainant not considered.

J. William Ellis, of Buffalo, N. Y., for complainant.
Richard R. Martin, of Utica, N. Y., for defendant.

RAY, District Judge. [1] The master's report was filed November 10, 1914. November 5th, the defendant presented to the master certain exceptions to the proposed or draft report which were considered by the master and filed with the report. November 19, 1914, the defendant filed his exceptions to the report. December 5, 1914, the complainant filed his exceptions to such report. I do not find any exception of complainant to the proposed or draft report. In order to comply with the terms of Equity Rule 66 (1913, 193 Fed. xxxvii, 112 C. C. A. xxxvii), the exceptions to the report, not the draft report, should be filed within the 20 days succeeding the filing of the report as actually made by the master, and these exceptions are to the report as made, not to the draft report. Equity Rule 66 (1913) reads as follows:

    "The master, as soon as his report is ready, shall return the same into the clerk's office and the day of the return shall be entered by the clerk in the equity docket. The parties shall have twenty days from the time of the filing of the report to file exceptions thereto, and if no exceptions are within that period filed by either party, the report shall stand confirmed. If exceptions are filed, they shall stand for hearing before the court, if then in session, or, if not, at the next sitting held thereafter, by adjournment or otherwise."

The reason of the rule is apparent. It prevents delay, gives a reasonable time, and informs the opposing party of the objections to the report. The exceptions raise the issue. The object of filing objections with the master to his draft or proposed report is to give him an opportunity to correct his report, reconsider any point objected to, and decide differently if he on reconsideration deems himself in error. But these exceptions to the proposed or draft report are not a substitute for the exceptions required to be filed to the report as finally made and do not take their place. If additional time in which to file exceptions to the report of the master is desired, application to the court for such extension should be made. Here this was not done and has not been done. The exceptions of complainant to the report of the master were filed too late and cannot be considered. There may be error in the report, in that the master did not heed the exceptions filed to the proposed or draft report; but, if exceptions are not filed in time to the report as made and filed by the master, such er-

rors, if any, are deemed waived. The master has reported net profits at $2,826.26 with interest from the date of such report, October 23, 1914.

The exceptions of defendant duly filed claim that the following deductions should have been made, viz.: (1) $476 claimed to have been paid a stenographer and an expense of defendant's business in making and selling the infringing goods. (2) $136, salary of bookkeeper, an expense of defendant's business in making and selling the infringing goods. (3) $1,162.50, one-fourth of the salary and traveling expenses of one C. E. Marks, a traveling salesman, claimed to have been paid him for salary and services in selling the alleged infringing goods. (4) $1,100, claimed to have been paid one H. J. Smith, a traveling salesman, for services and expenses in selling the infringing goods. These items, if allowed, will wipe out the $2,826.26. If all these items are justly allowed, it will demonstrate that the defendant was conducting this infringing business at a loss.

The defendant conducted his business in the city of Utica, N. Y., under two names, "D. B. Smith & Co.," and "Yankee Company." Under the first name he sold spray pumps, and under the name Yankee Company he sold nursing bottles and nipples, mufflers for gas engines, and whistle outfits for motor boats. In the conduct of these two businesses under the two names the defendant employed one bookkeeper, two stenographers, three traveling salesmen, and his son, Myron H. Smith, who acted as general manager of the Yankee Company.

The infringement began March 18, 1909, and terminated July 12, 1910, when an injunction was served. The defendant also dealt in nursing bottles and nipples held not to infringe.

The master found the gross profits to have been $3,367.04. The master finds, and the evidence sustains and demands the finding, that the expenses of conducting the business of the two companies named was not separated, or kept separate, on any of the books of such companies. It was conceded by the testimony of said Myron H. Smith that it would be and is impossible for a stranger to this business, or these businesses, to tell or ascertain what the expense of conducting each business or the parts of each was. Said Myron H. Smith, in behalf of the defendant, wrote the master as follows:

"There are no books in our office kept either by the Yankee Company or by D. B. Smith & Co. containing entries of amounts paid to Mr. Marks or to Harry J. Smith for salary or expenses. There are no entries on our books covering the items of postage claimed in the account which we filed. There are no entries in our books of salary paid to stenographers or to our bookkeeper. We do not keep any general ledger showing our expense accounts. We do not keep any purchase journal. We do not keep any cashbooks showing cash received or paid out."

This was in response to a request for the books, etc. He also stated that checks desired and called for to show alleged payments were not kept, although some undoubtedly could be found by search, but wrote it would take time, and in effect it appears he preferred to rely on other testimony. The cash received by the one company was not kept separate from that received by the other. The only account books kept by the Yankee Company were a ledger and duplicate

binder of invoices, and the books kept by D. B. Smith & Co. were the same, with the addition only of a journal or order book in which was entered the orders received by the latter company. The money received by both companies were commingled and deposited in bank, but whether to the credit of D. B. Smith or D. B. Smith & Co. does not appear. Payments were made by the checks of the defendant, and no record was kept or produced showing for which company, or the benefit of which company, the deposits were withdrawn. The paid checks were not produced. Neither the stenographer nor the bookkeeper was called as a witness, and the only testimony as to their employment, their salaries and compensation, or the work they did and for which company, was that of the son of the defendant, Myron H. Smith, who testified from memory in these regards. His testimony on these subjects was largely made up of estimates and opinions. The defendant himself was not sworn as a witness, and the books, such as were kept, were not produced. In January, or February, 1909, said Smith says the salary of the bookkeeper was increased $2 per week on account of the nursing bottle business taken on.

One Charles E. Marks has been a traveling salesman in the employ of defendant since January, 1899, selling the goods of D. B. Smith & Co. In 1907, or 1908, in connection with such goods he took on and carried the line dealt in by the Yankee Company, nursing bottles, nipples, and mufflers. He testified that in his opinion he spent one-half his time in the nursing bottle business, but stated that the estimate was made wholly from memory, as he kept no record or memoranda as to time spent in dealing with the different classes of goods or of his expenses relating thereto and properly chargeable to the respective companies.

In January, February, and March, 1910, Harry J. Smith, also a son of the defendant and at his request, made a trip through the Southern States for the purpose of introducing and selling these infringing nursing bottles and nipples to the trade, for which he received a salary of $150 per month and $50 per week for expenses. Harry J. testified that he took but few orders that were filled by the defendant. Myron H. testified that numerous orders were sent in by his brother Harry, but, as most of them "had strings attached to them," they were not filled. None of such orders or of the letters declining to fill them were produced. Myron H. testified the arrangement for this trip was made with Harry by his father. The father was not called as a witness, and no excuse for his silence was shown. It is impossible to ascertain from the evidence produced, the books mentioned not having been produced (possibly these will not show), the number of orders, if any, taken by Harry J. and filled.

The special master says:

"From the foregoing facts I find this to be clearly a case where the expenses of conducting the business of the Yankee Company and that of the D. B. Smith & Co. were so confused and intermingled that it is impossible from the books or otherwise to determine with any degree of accuracy what proportion of expenses are properly chargeable to the nursing bottle business. Certainly it would not be fair to the complainant to allow the whole amount of deductions claimed by defendant, as it is plainly shown that the time of the stenographer was occupied with the whistling outfit and muffler business

as well as the nursing bottle business, and in addition she gave, at times, a portion of her services to D. B. Smith & Co.

"As to the extra salary of $2 paid bookkeeper, there is not, in my opinion, sufficient evidence to allow said claim, as the only evidence given upon the subject was the testimony of Myron H. Smith which is entirely based upon memory with no record or entry of any kind to show when the expense began or what the real arrangement was leading up to said increase of salary.

"Likewise the salary and expenses paid to C. E. Marks, traveling salesman. He undoubtedly was occupied during part of his trip in selling nursing bottles and nipples. There is only his testimony as to the amount of time he devoted to the nursing bottle business which is estimated by him, which estimate is based wholly on memory, to have been one-half of his time, although he could furnish no proof as to the actual time spent or expense incurred in selling or endeavoring to sell said articles. Myron H. Smith in making up account for defendant claimed but one-fourth of the salary and allowance for expense to this salesman for the nursing bottle business.

"I further find that the trip made through the Southern States by Harry J. Smith during the months of January, February, and March, 1910, was entirely experimental, although he received the same salary and allowance for expenses that had been paid to him by his father (the defendant) for several years previous while on the road selling spray pumps for D. B. Smith & Co. He admittedly was without experience in the nursing bottle business when he made such trip and had not previously attempted to sell nursing bottles and nipples, yet received the same salary and a larger expense account than did the salesman Marks, who had had several years' experience with a similar line of goods. In the absence of any record showing the amount paid said Harry J. Smith, and in view of the fact that he was continued on the road during said period and the orders received from him were repeatedly rejected, it does not seem proper that the expense of said experimental trip should be borne by complainant.

"The defendant was in a position to know whether the confusion existing could be cleared up or not if the books of the D. B. Smith & Co. had been produced. He certainly had an opportunity to produce them, but failed to do so.

"In view of the foregoing, any amount found as a deduction for said expenses would be merely speculation and guess work with no definite result.

"Had the books of the D. B. Smith & Co. and the Yankee Company been properly and completely kept, the rule of apportionment might easily have been applied as was done in the old and well-known case of Rubber Company v. Goodyear, 9 Wall. 788 [19 L. Ed. 566].

"I find it impossible to apply such rule to this case.

"This case, in my opinion, comes clearly within the meaning of the recent case of Westinghouse Electric Mfg. Co. v. Wagner Electric Mfg. Co., 225 U. S. 604 [32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653].

"I therefore find and report that there should be a decree in favor of complainant for the sum of $2,826.26, with interest from the date of this report."

Is there error in these conclusions?

[2, 3] In causing these infringing goods to be made and in selling them the defendant was a wrongdoer. His acts constituted a tort. On the accounting before the master the burden in the first instance was on the complainant to show the profits. This burden he sustained, and no exception is taken to the finding as to gross profits, or by defendant to these deductions made by the master so far as they went; but it is claimed these other alleged expenses were incurred and paid in running the infringing business or in making the infringing sales, and hence are properly to be deducted from such gross profits also. When the complainant had sustained and satisfied the burden resting upon him, he was entitled to all of such profits as he had proved on goods sold, unless the defendant should show by clear and satisfac-

tory proof that he had incurred and paid expenses in the making and selling of such infringing goods which should be deducted. In this the burden was on defendant. He was not sworn, and the books were not produced as before stated.

[4] It seems to me, in view of the authorities, that where an infringer of a patent engaged in making, or causing to be made, and also in selling, the infringing articles, and also in making and selling other noninfringing goods, and perhaps in both making and selling other noninfringing goods, fails to keep books or accounts or memoranda which enable him or others to separate and distinguish the expense of making and selling the infringing article from that of the others, and so commingles and intermixes his manufacturing and selling businesses and the expenses thereof as to make it impossible to separate the expense of the infringing business, selling the infringing goods, from that of the others, with any reasonable degree of certainty, such infringer cannot be allowed a deduction from the gross profits on sales of infringing goods proved, on mere surmise, guess, speculation, or estimates, or on mere opinion evidence not based on definite facts but mere opinion based on general recollection as to the time actually spent and salaries or wages paid in making and selling the infringing articles. The negligence or loose business methods of an infringer cannot be used by him as a shield, or as a weapon of offense, in dealing with the one whose rights he has thus invaded or to defeat the recovery of profits actually made by the infringer. In this case all deductions have been made except certain alleged expenses of selling the infringing goods.

[5] As the complainant can recover only the profits on infringing goods sold by defendant, sales actually made, it would seem plain that defendant cannot offset, or counterclaim, or have deducted from the profits derived by him on sales actually made, the expenses incurred and paid in attempting to make sales which were not made or consummated. As there were no profits on such attempted sales, there can be nothing to deduct, and expenses incurred and paid in such attempted sale, or attempts to make sales, but which proved a failure, cannot be charged against profits or used to reduce a recovery of profits actually realized from the sales actually made. In Crosby Valve Co. v. Safety Valve Co., 141 U. S. 441, 456, 457, 12 Sup. Ct. 49, 35 L. Ed. 809, the infringer in carrying on his infringement of complainant's patent made certain infringing valves which defendant destroyed. These and the expenses of making them were a dead loss in the business of making and selling infringing goods, but the Supreme Court held that:

"It was also proper not to allow a credit for the destroyed valves against the profits realized by the defendant on other valves."

At page 456 of 141 U. S., at page 54 of 12 Sup. Ct., 35 L. Ed. 809, the court, citing the master's report, said:

"The result therefore is substantially this: That the defendants made some 119 valves which they subsequently destroyed, with some castings which they concluded not to use. I find no sufficient reasons for modifying my former disallowance of item 7 in each case."

As to this the Supreme Court said:

"As for the contention that the destroyed valves ought to form a credit against the profits actually realized by the defendant on other valves, it is sufficient to say that the only subject of inquiry is the profit made by the defendant on the articles which it sold at a profit, and for which it received payment, and that losses incurred by the defendant through its wrongful invasion of the patent are not chargeable to the plaintiff, nor can their amount be deducted from the compensation which the plaintiff is entitled to receive. Cawood Patent, 94 U. S. 695 [24 L. Ed. 238]; Elizabeth v. Pavement Co., 97 U. S. 126, 138 [24 L. Ed. 1000]; Tilghman v. Proctor, 125 U. S. 136 [8 Sup. Ct. 894, 31 L. Ed. 664]."

In the instant case the expense of the experimental trip of the son of defendant was a loss in the business, and not an expense of selling the infringing goods on which defendant is charged a profit. If he sold any, the number does not appear. If the correct rule be the profits derived from the infringing business taken as a business and by itself, then when the amount of gross profits of that business is proved it is to be reduced by legitimate and proper and proved expenses of conducting that particular business. These deductions should be based on proof of facts, not on mere estimates and opinions where the expenses were so intermingled with the expenses of sales of other articles as to be absolutely indefinite. This is especially true when the books kept are not produced. But, I take it, this is not the rule for ascertaining profits. At least it was not adopted by the master in this case. But even so it is impossible from the evidence to determine except by guess and speculation the amount of expenses not already allowed, chargeable to the nursing bottle business. If every avenue of getting at the truth in this regard had been thrown open by the defendant, and every means exhausted, the court would be inclined to lean far towards the side of the defendant; but here it finds no reasonable ground for materially relaxing the rules applicable. In Walker on Patents (4th Ed.) § 713, p. 561, it is said:

"Where a part of the infringement of a defendant resulted in profits, and the residue resulted in losses, the complainant is entitled to recover those profits without any deduction on account of those losses."

The author cites Callaghan v. Myers, 128 U. S. 664, 9 Sup. Ct. 177, 32 L. Ed. 547; Crosby Valve Co. v. Safety Valve Co., 141 U. S. 453, 12 Sup. Ct. 49, 35 L. Ed. 809; Graham v. Mason, 1 Holmes, 90, Fed. Cas. No. 5,672; and Steam Stone Cutter Co. v. Mfg. Co., 17 Blatch. 27, Fed. Cas. No. 13,335. This applies to the expenses of the southern trip made by the son of the defendant.

In Walker on Patents (4th Ed.) § 715, p. 562, the author says:

"The generic rule for ascertaining the amount of the profits recoverable in equity for the infringement of a patent is that of treating the infringer as though he were a trustee for the patentee, in respect of the profits which he realized from his infringement. The specific rules by means of which this generic rule is administered are somewhat numerous and somewhat elastic. They are adapted to the varying natures of patented inventions, and to the varying circumstances under which the patents for those inventions are respectively infringed. They all require the best evidence, of which the nature of each particular case to which they may be respectively applied will reasonably admit, and that evidence must be reasonably definite and convincing."

In Fischer v. Hayes (C. C.) 39 Fed. 613, it was held:

"Where a master reports that the profits of defendant derived from the infringement of plaintiff's patent cannot be computed from the evidence, nominal damages only can be assessed, though it is apparent that there were profits."

This goes on the principle that there must be evidence of the amount of the profits. In Locomotive Safety Truck Co. v. P. R. Co. (C. C.) 2 Fed. 677, it was held:

"Although an infringer may be answerable in damages, he is not to be held liable for profits unless there is some satisfactory evidence from which the value of the advantage derived from the use of the invention can be measured."

In the opinion, at page 681 of 2 Fed., the judge said:

"Some witnesses, it is true, have given estimates of the saving of wear by the use of the swinging truck. But an examination of their testimony convinces me that their estimates are mere guesses, without any reliable basis. There are no facts in evidence to justify them."

[6, 7] Such is this case as the master finds, and on going over the evidence I am convinced he was correct in his conclusions. If the complainant cannot recover profits without producing clear and satisfactory proof of their amount, on what principle or sound theory can it be held that defendant, profits once proved, can wipe them out by mere estimates of expenses incurred, books being withheld? In getting at damages and profits in patent cases the ordinary rules of evidence should be applied so far as applicable, and no arbitrary rules should be allowed to prevail over the clear equities of the case. But an infringer, so adjudged, is held to be a trustee for the owner of the patent infringed, and, if he has so intermixed and confused the profits received with other matters that either he or the one whose rights have been invaded and disregarded must bear a loss, that loss must fall on the infringer. This has been decided many times. Westinghouse Electric Mfg. Co. v. Wagner Elec. Mfg. Co., 225 U. S. 604, 620, 621, 622, 32 Sup. Ct. 691, 696, 697 [56 L. Ed. 1222, 41 L. R. A. (N. S.) 653], where the court said (including quotation approved by it):

"But when a case of confusion does appear—when it is impossible to make a mathematical or approximate apportionment—then from the very necessity of the case one party or the other must secure the entire fund. It must be kept by the infringer, or it must be awarded, by law, to the patentee. On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee and by judicial decree repeal the provision of Rev. Stat. § 4921, which declares that in case of infringement the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.' * * *

"In the present case the infringer's conduct has been such as to preclude the belief that it has derived no advantage from the use of plaintiff's invention. * * * In these circumstances, upon whom is the burden of loss to fall? We think the law answers this question by declaring that it shall rest

upon the wrongdoer, who has so confused his own with that of another that neither can be distinguished. It is a bitter response for the court to say to the innocent party, 'You have failed to make the necessary proof to enable us to decide how much of these profits are your own;' for the party knows, and the court must see, that such a requirement is impossible to be complied with. The proper remedy to be applied in such cases is that stated by Chancellor Kent in Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62, 108, where he said: 'The rule of law and equity is strict and severe on such occasion. * * * All the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to distinguish his own property or lose it.'

"It may be argued that, in its last analysis, this is but another way of saying that the burden of proof, is on the defendant. And no doubt such, in the end, will be the practical result in many cases. But such burden is not imposed by law; nor is it so shifted until after the plaintiff has proved the existence of profits attributable to his invention and demonstrated that they are impossible of accurate or approximate apportionment. If then the burden of separation is cast on the defendant, it is one which justly should be borne by him, as he wrought the confusion."

I think this applies here.

The master could not guess with any degree of accuracy the amounts that were paid by defendant to stenographer and traveling salesmen as expenses and for service, etc., in selling the infringing goods, and the evidence given only presented a basis for a guess or mere estimate, nothing more. Sufficient facts were not proved upon which to base a reliable estimate. I am not to be understood as deciding that where a person works in selling infringing goods and other merchandise also, and keeps no account of the time devoted to the selling of the one as distinguished from the other, he may not give his estimate and recollection of the time devoted to each, but such estimate must be based on facts within the recollection and knowledge of the witness, such as demonstrate with reasonable accuracy the correctness of the estimate. This court cannot guess at the amount with more accuracy than the master could have done, and, as he declined the task, this court does not feel justified in undertaking to say he was wrong. The master also declined to adopt the guessed or estimated amounts given by the salesmen and manager as his or their idea of the proper deductions. Clearly, under the evidence, the stenographer devoted a large part of her time to other work. It is not shown that she could not have been produced as a witness. The books of D. B. Smith & Co. should have been produced, and the defendant himself ought to have known, and if called been able to tell, something of the business arrangements he made and expenses, etc., paid on his own checks in selling the infringing goods.

I think the result arrived at by the master as nearly a correct and just one as it is possible to obtain under the evidence, and there will be an appropriate order confirming the report and overruling the exceptions.

As to the compensation of the master, I will allow $20 per day for 23 days, or $460, and $100 for supervision of examinations, and $61.10 stenographer, in all $621.10, to be paid by the defendant.

There will be an order accordingly.